In the Matter of SADIE BERMAN, Petitioner, against SIMON BERMAN, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Kings County, December 30, 1938.

*Solomon A. Schlesinger,* for the petitioner.

Respondent in person.

COBB, J. This is a motion by the petitioning mother in a support proceeding to obtain custody of her nine-year-old son from the father, the respondent herein. The support petition, upon which the pending proceeding is based, was filed July 22, 1936. An order for the support of the wife and of the child, who was then in her custody, was thereafter made. After this came divers changes in the order, followed by a period when the parties lived together. Then, on August 12, 1937, the petitioner consented that the father have the child, the parties to live separate and apart. An order was thereupon made of seven dollars a week for the support of the wife only. This order has been in force ever since and the boy has stayed with the father in the home of a paternal aunt where he has supported him.

The mother now comes and says that she gave up the child through illness and force of circumstance, that he is neglected, and that his welfare and best interest require that he be returned to her. It seems that the mother's health has improved, that she is to some extent self-supporting, and, with the aid of a grown

daughter who resides with her, can provide a suitable home for the boy if the father continues a proper measure of support.

The mother's application was supported by the testimony of herself and her two daughters. She asserted that not only is the child neglected in various ways, but is cruelly treated, so that he is unhappy and his health impaired; also that he is exposed to possible immoral influences because of the alleged infatuation of the father for another woman. Neglect was vigorously denied by the father, who described at length the boy's care and environment. He admitted that he had at one time wished to divorce the petitioner and that a lawyer had written a letter on his behalf to the petitioner. This letter contained a statement that the respondent would give ten dollars a week for the support of his wife and child in the event of a divorce.

The boy's testimony was also taken. This disclosed unhappiness at being separated from his mother, though he disclaimed dislike of his father notwithstanding that the latter sometimes disciplined him for misbehavior. He wished to be with both of his parents, but, if he had to make a choice, would rather be with his mother.

The boy has been examined by the court's physician and found to be in good health with no evidence of malnutrition or other lack of care or abuse. A children's society investigation of home conditions was favorable.

After hearing and observing the witnesses I am of the opinion that none of the mother's charges has been satisfactorily sustained, unless it be that the child would be happier with the mother and might receive a larger measure of care and attention from her and the older sister who resides with her. In short, the child's best interest, happiness and welfare might well be enhanced by a change of custody. But is this all? Is there enough proven to justify the court in giving custody to the mother under the jurisdiction and powers vested in it by the Domestic Relations Court Act of the City of New York (Laws of 1933, chap. 482)?

Section 91 of said act provides that the Family Court " in proceedings properly brought before the court for the support of a wife, child or poor relative it shall have (a) jurisdiction for the protection, guardianship and disposition of neglected or dependent minors."

Authority for this enactment is to be found in section 18 of article 6 of the Constitution of the State of New York, as amended in 1921. So far as pertinent this reads as follows: " The Legislature may establish children's courts, and courts of domestic relations, as separate courts, or as parts of existing courts or courts hereafter to be created, and may confer upon them such jurisdiction as may

be necessary for the correction, protection, guardianship and disposition of delinquent, neglected or dependent minors, * * * and to compel the support of a wife, child, or poor relative by persons legally chargeable therewith who abandon or neglect to support any of them."

It is plain that both under the constitutional provision and the above language from the act passed pursuant to it the child must be either neglected or dependent.

In construing the constitutional provision in a children's court case where no neglect was found, but where the lower court proceeded on the theory of the child's best interest and general welfare, the Appellate Division, in the case of *Matter of Cole* (212 App. Div. 427, 428), said:

" General jurisdiction over children such as is exercised by the Supreme Court * * * is not vested in Children's Courts. The order in this case, based upon the general welfare of the child, is, therefore, unwarranted.

" The mother of this child is one of her legal guardians (Dom. Rel. Law, § 81), and her legal right to dispose of the custody and tuition of the child must prevail in this proceeding unless the condition of neglect defined by the statute is established to the satisfaction of the court.

" On the other hand, where neglect is shown to exist, the exercise of jurisdiction by the Children's Court is beneficent and should be unhesitating, even though the result is an interference with the natural guardianship of a parent."

In *Matter of Caposella* (255 App. Div. 863) the court said, in following *Matter of Cole* (*supra*): " It is not the meaning or intent of the statute that a child shall be deemed ' neglected ' merely upon a showing that some one other than the present custodian has a paramount right to the child's custody."

In the case of *Matter of Walsh* v. *Walsh* (146 Misc. 604) the court said, under somewhat similar circumstances:

" Presumably, the Legislature did not intend to confer on this court [the Children's Court] powers in excess of those which may lawfully be conferred upon Children's Courts pursuant to article 6, section 18, of the Constitution.

" It follows that unless the children whose custody is in question fall within the class of delinquent, neglected, or dependent minors, this court is without power to determine their rightful custody as between their parents. To hold otherwise would violate the fundamental law from which the court derives its powers."

It is clear that a like limitation exists as to the Family Division of the Domestic Relations Court of the City of New York for the

reason that both children's and family courts are governed by the same wording in the constitutional provision.

If the child in the case under consideration can be considered as a dependent child, then power as to its disposition undoubtedly exists. So long as he is maintained by his father he can no more be said to be dependent than any other child. Moreover, the language of the constitutional provision does not make a child whose support is compelled by one legally chargeable therewith a dependent child in the sense that the word is used in the Constitution. A dependent child has been defined as " the term applied to normal children who must be supported by others than their natural guardians." (*Matter of Souers*, 135 Misc. 521, 526.) See, also, section 300 of the State Charities Law, giving an even more restricted statutory definition. It must follow that the child in the present instance is not a dependent child. (Cf. *People ex rel. Converse* v. *Derrick*, 146 Misc. 73, 78.)

Again, it will be found that the Family Court Division of the Domestic Relations Court is far more limited by the act in the exercise of power over the custody of children than is the Children's Division of that court. (See Dom. Rel. Ct. Act, § 61, subds. 1, 6.) The only provisions in the act relating to the Family Court governing such exercise of jurisdiction are to be found in' section 92 thereof. These read as follows: " In the exercise of its jurisdiction the court shall have power  *  *  *  (7) In case where a child is involved to make an ' order of protection,' in assistance or as a condition of an order for support, setting forth conditions of behavior to be observed for a specified time which shall be binding upon husbands or wives, or both, as circumstances may require, and which must be reasonable."

Also: " (8) To award the custody of the children, during the term of such order of protection, to either spouse, or to an appropriate relative within the second degree."

Here, plainly, the protection of children is sought in harmony with the constitutional provision. Equally plainly, that end may be attained only where " an order of protection " is granted. It is essential, therefore, that a child need protection and that an order to that effect exist before custody may be awarded or changed. Indeed, section 92 provides specifically the various circumstances that authorize an order of protection. These include keeping an undesirable spouse away from the children or from the home or from the other spouse; regulating visitation of the children; abstention from offensive conduct by either spouse against each other or the children; compelling proper attention to the care of the home; and the prevention of anything that would tend to make the home

an improper place for the other spouse or for the children. (§ 92, subd. [7], clauses [a], [b], [c], [d], [e].)

These things largely savor of actual or threatened neglect. (See Dom. Rel. Ct. Act, § 2, subd. [17], defining neglected child.)

It is also noteworthy that an award of custody may only be " during the term of such order of protection " and this in any event may not extend beyond the duration of the support proceeding itself. As a result it is manifest that the award is no permanent solution of a custody problem. That is left to other tribunals.

It requires a wide stretch of the imagination to believe that the provisions of the Domestic Relations Court Act of the City of New York were ever intended to grant to the Family Court powers co-extensive with those of the Supreme Court. Indeed, the Legislature could not do so even had it been so inclined.

So far as either the Family Court or the Children's Court acts within their powers their adjudications are properly subject to review only by appeal as in the act provided, for the source of such powers is the Constitution itself and to the extent provided is just as sacred and free from the interference of other tribunals as are the powers, statutory or inherent, of the Supreme Court itself. However, this does not mean that both the Family Court and the Children's Court are not both confined to constitutional and statutory limits.

Hence, if there be no neglect or dependency, the fact that a change of custody from one parent to the other would otherwise be for " the best interest of the child," or " best promote its welfare and happiness," is something which the Supreme Court may alone determine. (Dom. Rel. Law, § 70. See *Finlay* v. *Finlay*, 240 N. Y. 429.) Or, in a proper case, the Surrogate's Court. (Surr. Ct. Act, §§ 173 *et seq.; Matter of Lee*, 220 N. Y. 532, 539.)

The motion is, therefore, denied.