ANONYMOUS, Petitioner, *v.* ANONYMOUS, Respondent.

Domestic Relations Court of New York, Family Court, New York County, March 19, 1940.

*Buch & Buch* [*Joseph Buch* of counsel], for the petitioner.

Respondent in person.

SICHER, J. The petition herein was filed against the mother of a minor child after a petition previously filed against the father had proved fruitless.

On January 24, 1940, a warrant was issued for such father in the proceeding against him (docket No. 153—1940), but it is still unexecuted and he has not been found within the State.

The child (" John Doe ") in whose behalf his paternal grandmother filed both petitions is the son of E. D. and B. D. (the above-named respondent). He was born on July 6, 1923, and will attain the age of seventeen years on July 6, 1940.

John is a fourth term pupil at X High School; he is not robust and under doctor's orders consumes eleven quarts of milk each week.

The parents have been separated for upwards of twelve years, and John has been living with petitioner since he was about four years old. Originally, petitioner's household included also her own husband and two unmarried daughters (A. and B.) and at times also John's father. But petitioner was widowed in 1936, her daughter A. died in July 1939, and in December, 1939, her son E. disappeared and stopped the contributions which he had formerly made, although irregularly, toward the upkeep of petitioner's household and his son John's maintenance.

Except for life insurance, petitioner's late husband left nothing. After his death the petitioner's mainstay had been the earnings of her daughter A., who, in turn, died in July, 1939, and left to her sister B. as beneficiary only an amount barely adequate to cover the expenses of decedent's last illness and burial. So upon B. has fallen the burden of endeavoring to support petitioner, who is seventy-four years old, of failing eye-sight, without earning capacity, and possessed of no income or property except a small balance of her late husband's life insurance moneys.

Unquestionably, the primary obligation for the support of a minor child rests upon its father. (*DeBrauwere* v. *DeBrauwere*, 203 N. Y. 460. Cf. *Anonymous* v. *Anonymous*, 171 Misc. 644.) But even at common law the mother has a secondary liability if the father fails to discharge his primary duty. (See *Hagopian* v. *Samuelson*, 236 App. Div. 491.) And in any event the mother's secondary liability is expressly recognized and enforcible by statute, the basis for the instant proceeding against the respondent-mother being subdivision 2 of section 101 of the Domestic Relations Court Act of the City of New York, namely: " Where *the father of a child* is dead or is incapable of supporting his child or *cannot be found within the State, the mother of such child is hereby declared to be chargeable with its support* and, if possessed of sufficient means or able to earn such means, may be required to pay for its support a *fair and reasonable*

*sum according to her means*, as may be determined by the court." (Italics supplied.)

The liability of grandparents arises, under subdivision 3 of that same section, only when and if the court is unable to secure adequate support for the child from either or both of its parents and the child's grandparents are of sufficient means. So, as between John's mother and his grandparents, the mother's legal liability is the primary one, even though, as between the father (now disappeared) and the mother, the father's liability comes first.

Moreover, the paternal grandmother (petitioner) is without means to support the child; and the maternal grandmother resides in California and is not now under the jurisdiction of this court.

There is no legal obligation whatever, either at common law or by statute, on the part of the paternal aunt B., although her attachment to John is such that she will doubtless struggle to do all she can for him and to supplement the support from John's mother.

Accordingly, as indicated at the close of the testimony, it remains only to determine what is the " fair and reasonable sum " which the mother may at this time be required to pay. (Cf. *Matter of Wignall* v. *Wignall*, 163 Misc. 910.)

Respondent is a telephone operator employed at X Hospital at a salary of ninety dollars per month (payable in semi-monthly installments of forty-five dollars on the fifteenth and last business days of each month), plus meals on the six working days of each week. That is her only ascertained income or property. She is a remainderman-beneficiary under a California will but testified that her interest is contingent on survivorship of her mother as the life beneficiary. So, upon the evidence presented, that estate interest must be disregarded as constituting any " means " of respondent at this time, and the amount of today's order is predicated on that assumption.

The aforementioned " fair and reasonable sum " must, therefore, be computed with reference only to respondent's cash income of ninety dollars a month (plus meals) or about twenty dollars and seventy-seven cents a week (not the twenty-two dollars and fifty cents per week sum erroneously postulated in petitioner's counsel's helpful brief).

Respondent testified that she is unable to contribute anything at all towards John's support; and it was evident from her demeanor upon the stand that she resents this proceeding and feels no legal and not much moral, obligation to John, doubtless because he has been living since early childhood with the family of her estranged husband and until now she has not been called upon to finance his maintenance during these many years. Her affections seem to

have centered, instead, on her two other children, a daughter (D.), now twenty-two years old, and another son (E.), now nineteen years old but an inmate of a reformatory or penitentiary in Ohio. Nevertheless, although it would not be unnatural that John should feel closer to his grandmother and aunt in view of the circumstances of his up-bringing, there is no evidence of any attempt of the petitioner to turn the child against his mother. Indeed, respondent testified that she sees John regularly and that she is considering taking steps to cause him to live with her.

Questions of custody cannot be determined as an incident to a Family Court support proceeding (*Matter of Berman* v. *Berman*, 169 Misc. 921) and there has been shown no basis whatever for a neglect petition in the Children's Court Division. So, any application for change of John's custody would have to be made to the Supreme Court. However, it is my impression that respondent's remark concerning John's custody was merely an *in terrorem* gesture and an outburst of irritation at respondent's being suddenly called upon to assume a burden which should be carried by the father. But if respondent did make that statement deliberately and in good faith it would be some indication of undisclosed resources. For, obviously, since she represents herself as unable to pay anything toward a continuance of John's maintenance in his grandmother's home, it is difficult to figure out how she could house, feed and clothe him in her own home and provide proper supervision during her absence at work.

In support of her contention of financial inability to pay any amount whatever toward John's support, respondent testified that out of her income of ninety dollars month (*i. e.*, twenty dollars and seventy-seven cents a week) she was already obligated for the following fixed weekly sums:

| | |
|---|---:|
| Rent for a furnished room in sister's home | $8 00 |
| Food (on day off) | 1 00 |
| Carfare | 1 20 |
| Gratuity to her daughter D. | 1 25 |
| Gratuity to her son E. | 1 00 |
| Installment payment in reduction of bank loan | 1 50 |
| | $13 95 |

To the foregoing total of approximately fourteen dollars there must be added three dollars as respondent's estimate of the amount allocable per week for clothes and laundry; for respondent's employment does necessitate her keeping herself well-groomed. So, on the surface, respondent's minimum fixed expenditures now

aggregate about seventeen dollars per week and that would leave a margin of only about three dollars and fifty cents for amusements, incidentals and emergencies.

But, although it will be a disturbing inconvenience, not to say a hardship, respondent's budget must, and can, be rearranged to provide for the payment of about five dollars a week for the support of her son John.

On the other hand, respondent's means are insufficient to enable the court at this time to direct her to provide the entire amount of John's reasonable requirements.

For example, the following are certain of the foregoing items which appear capable of elimination or reduction:

(1) The weekly item of one dollar and fifty cents on account of a loan, from The National City Bank of the City of New York, which had been reduced to eighteen dollars before March 1, 1940, and will, therefore, be fully discharged soon.

Respondent mentioned a recent " private " loan of $100. But she was quite vague as to its nature and purpose, and her testimony failed to show that it was so pressing that if not punctually paid it might result in a garnishment upon respondent's salary or otherwise jeopardize her job.

(2) However helpful it may be to assist respondent's daughter D., that contribution cannot be allowed to take precedence over respondent's legal obligation to her son John. For there is no common-law duty to support a child after its attaining the age of twenty-one years (*Matter of May*, 255 App. Div. 31, at p. 33, and cases cited); and there is no evidence whatever indicating that D. is a " dependent adult likely to become a public charge " within the purview of the statute (Dom. Rel. Ct. Act of City of N. Y. § 101, subd. 4).

(3) I am reluctant to suggest that there be stopped or curtailed the remittances which respondent sends to her son E. for luxuries and to strengthen the bond between her and·him; but respondent's legal obligation to John must likewise take precedence over those gifts to E., who is now in an institution which lodges, feeds and clothes him.

(4) The item of eight dollars a week for a room seems excessive. Respondent's sister testified that she also has other rooms renting for as little as two dollars a week. So, although it may be disquieting to respondent to change to quarters lacking the comforts of an eight-dollar room, her personal convenience must be to some degree subordinated to her legal and moral obligations to her son John.

For the foregoing reasons I direct that respondent pay into this court, for the support of her son John, the sum of five dollars on

March 25, 1940, and thereafter the semi-monthly sum of eleven dollars on the first and sixteenth days of each month, beginning with a first payment on April 1, 1940.

The above-directed payments shall continue until further order of this court, subject, however, to the right of petitioner to apply for a discontinuance after John shall have attained the age of seventeen years. I am inclined to the view that John's continued attendance at high school, his delicate health, and the scarcity of jobs for youths constitute such "exceptional circumstances," within the meaning of subdivision 4 of section 92 of the Domestic Relations Court Act of the City of New York, as to justify the continuance of today's order after John's seventeenth birthday and until his graduation from high school. (See opinion of Mr. Justice PANKEN in *Szilagyi* v. *Szilagyi*, 170 Misc. 1009, at p. 1010.) But for the reason that in its affirming opinion (257 App. Div. 630) the Appellate Division expressly declined to pass on the question whether that particular (grandmother) respondent's liability extended beyond the child's seventeenth birthday and for the further reason that respondent in the proceeding before me is not represented by counsel, I leave open to her the right to raise for future determination the question whether today's order should be discontinued after July 6, 1940, and her son John be remitted to filing a new petition as a "dependent adult," under subdivision 4 of section 101 and subdivision 9 of section 92 of the Domestic Relations Court Act of the City of New York. However, today's order is not to be deemed terminated automatically on July 6, 1940, but shall continue until modified or terminated by further order of this court, either upon an application by respondent or a proceeding to enforce arrears or to procure an increase.

Application for modification may also be made when and if (1) respondent's husband commences payments toward John's support, either voluntarily or under order entered in proceeding entitled docket No. 153—1940, or, conversely, (2) petitioner is able to prove by competent and credible evidence that the above-described California decedent estate is a present source of realizable property of respondent; or (3) any other material change of circumstances sufficient, in the absence of the foregoing express provisions, to entitle any party to apply for an increase or decrease or other modification of today's order pursuant to the customary practice of this court.

When and if respondent's husband be found and his financial ability suffices, respondent may be entitled to reimbursement for any moneys paid by her under today's order. (See *DeBrauwere* v. *DeBrauwere*, 203 N. Y. 460; *Laumeier* v. *Laumeier*, 237 id. 357, 364;

*Macfadden* v. *Macfadden*, 173 Misc. 85.) This court would not have jurisdiction to enforce such a cause of action, and respondent would have to seek that remedy elsewhere. However, this phase is called to her attention because she is not represented by counsel.

Three copies of this memorandum are being filed with the original and the clerk of this court is hereby directed to mail or deliver one copy to the attorney for petitioner, and one copy direct to respondent, and to place one copy in the file in the proceeding against the husband (docket No. 153—1940).