"FANNY JOHNSTON," Petitioner,* *v.* "ARTHUR JOHNSTON," Respondent.*

Domestic Relations Court of New York, Family Court, Kings County, November 21, 1941.

---

* This opinion as here published substitutes fictitious surnames and disguises certain other details, in consonance with the spirit of section 52 of the New York City Domestic Relations Court Act.

*Kreutzer, Hauser & Selman,* for the petitioner.

Respondent in person.

SICHER, J. The parties are parents of a child ("Henry") in whose behalf the mother has filed a petition against the father alleging that " said respondent on or about May 1, 1941, and subsequent thereto, refused and neglected to provide fair and reasonable support of said dependent according to his means and earning capacity," and praying " for such an Order for Support, directed to said respondent, as shall be deemed to be fair and reasonable, and for such other and further relief as the law provides."

That child, born October 18, 1925, is the sole issue of a marriage which was duly dissolved by August 16, 1940, decree of Second Judicial District Court of the State of Nevada, County of Washoe, entered in favor of the wife upon the husband's voluntary appearance by attorney. Such decree is in the conventional form of a Nevada absolute divorce on grounds of extreme cruelty and separation without cohabitation for three years. It recites that there is no provision in the laws of the State of Nevada for interlocutory divorce or restrictions on the remarriage of either party, restores each spouse to the status of a single person, and concludes:

" IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the agreement made and entered into between the plaintiff and defendant, dated July 12th, 1940, and on file in the above entitled Court as plaintiff's Exhibit 'A,' be, and the same is, hereby by this Court ratified and approved, and the provisions thereof are hereby adopted by this Court and Judgment is rendered in favor of each against the other according to the terms of said contract.  *  *  *

" That the Court reserves jurisdiction of the aforesaid child *  *  *  during his minority to make any further order that may seem right and equitable."

The agreement so incorporated by reference was a formal separation agreement executed under date of July 12, 1940, in contemplation of the aforementioned Nevada divorce decree. It provides no alimony for the amply self-supporting wife but stipulates as to the child:

" That the husband shall pay to the wife the sum of $60.00 per month on the 1st day of each month as and for the support and maintenance of their child ' Henry.' *  *  * It is understood that the aforesaid sum of $60.00 per month is predicated on the basis of the said husband's present salary.

" That the custody of the said child ' Henry ' is hereby given to the wife, and the wife shall maintain, educate and support the said child out of the allowance hereinbefore provided. The husband shall have a voice in the decisions regarding the welfare and upbringing of the child   *   *   *."

During May, 1941, respondent remarried and thereafter paid nothing toward his son's support.

Such default might have been made the subject of a summary judgment in an action brought in Municipal Court of the City of New York upon the Nevada decree. (*Hess* v. *Hess*, 276 N. Y. 486; *Goldberg* v. *Mayer*, 243 App. Div. 477; affd., 270 N. Y. 660.) But since that decree was not predicated on adultery, default thereunder would not be punishable by contempt in the Supreme Court of the State of New York. (*Miller* v. *Miller*, 219 App. Div. 61; affd., 246 N. Y. 636; *Hardy* v. *Hardy*, 136 Misc. 759.) Nor would action lie upon the separation agreement, because that contained, no stipulation for its survival after divorce and it was, therefore, merged in the Nevada decree. (*Chester* v. *Chester*, 171 Misc. 608. Cf. *Bell* v. *Bell*, Id. 605, and *Kunker* v. *Kunker*, 230 App. Div. 641, 645.)

Petitioner, therefore, elected to ask a prospective order of this statutory court of limited jurisdiction; and any such order must be within the framework of the legislative grant. In so far as relevant, the powers conferred on the Family Court Division include power:

" To order support of a   *   *   *   child   *   *   *, irrespective of whether " he " is likely to become a public charge, *as justice requires having due regard to the circumstances of the respective parties.*" (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1.)

" To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention,   *   *   *   the expense of educating his child,   *   *   *   and other proper and reasonable expenses." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 2.)

" To make all orders for support run until further order of the court, except that *orders for support of a child shall run until the child is seventeen years of age;* or, where there are physical or mental disabilities of the child or other exceptional circumstances that warrant it, in the discretion of the court during such period after seventeen years and beyond the child's minority as such physical or mental disabilities or other exceptional circumstances may continue." (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 4.)

Other pertinent statutory provisions are those covering failure to obey an order for support, namely, commitment to jail (N. Y.

City Dom. Rel. Ct. Act, § 132, subd. 1), direction for deduction, at the source, from the compensation of a respondent employed in any department of the city of New York (N. Y. City Dom. Rel. Ct. Act, § 132, subd. 2) and undertaking for support (N. Y. City Dom. Rel. Ct. Act §§ 151–159); also, the following:

"A husband is hereby declared to be chargeable with the support of his * * * children and, if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum *according to his means*, as may be determined by the court." (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1.)

"An agreement to separate shall in no way preclude the filing of a petition for the support of a child or the making of an order for its support by the family court." (N. Y. City Dom. Rel. Ct. Act, § 137.)

However, the aforesaid statutory grant does not include power to enforce the July 12, 1940, separation agreement or the August 16, 1940, Nevada decree as such. Neither of them is conclusive upon the present application nor entitles petitioner to the summary procedure and drastic remedies provided by the Domestic Relations Court Act of the City of New York.

For reasons of fact hereinafter set forth, the order entered herewith is in the same sum as the parties themselves stipulated on July 12, 1940. But that such an agreement, although persuasive evidence, should not be deemed inviolate in the instant proceeding is a conclusion compelled by the logic and language of *Goldman* v. *Goldman* (*supra*), dealing with an analogous situation which arose in a matrimonial action in the Supreme Court of the State of New York (likewise a statutory jurisdiction only). (See *Erkenbrach* v. *Erkenbrach*, 96 N. Y. 456.) There, too, the wife urged that a separation agreement figure was conclusive and that the Supreme Court lacked power to order a lesser sum in the divorce decree. In overruling that contention, the Court of Appeals held that " the agreement of the parties cannot and does not limit the power of the court conferred by statute. The direction of the court that the defendant shall pay to the plaintiff a sum less than he agreed to pay does not, however, relieve him of any contractual obligation. The plaintiff may still resort to the usual remedies for the breach of a contractual obligation, if there has been such breach, but the drastic remedies, provided by sections 1171, 1171-a, 1171-b and 1172, are available to the wife only, in so far as there is a failure to pay the amount fixed in the judgment as modified." (Fourth headnote, *Goldman* v. *Goldman, supra.*)

The question for determination here is, therefore, the " fair and reasonable sum according to his means " (N. Y. City Dom. Rel.

Ct. Act, § 101, subd. 1) which respondent may *at this time* be required to contribute towards his son's support " as justice requires having due regard to the circumstances of the respective parties." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1.)

Petitioner asks that the order of this court be for the same amount — sixty dollars a month — as the parties stipulated on July 12, 1940. But respondent offers only the lesser monthly sum of thirty-five dollars, pleading that a larger contribution by him toward the son's support will jeopardize the stability of the new home which he has now established with a second wife and her seven-year-old child by a former marriage.

Respondent's gross salary of $3,360 is exactly the same as on July 12, 1940; and his present net earnings are $226.12 a month, as compared with the slightly higher previous monthly net of $229.30. In July, 1940, there was, and still is, a semi-monthly New York city employees' retirement system pension deduction of $10.64; and there is now also a semi-monthly deduction of $16.30 on account of loans against previously accumulated deductions for such pension in lieu of $14.71 in July, 1940 — the difference being due to additional borrowings of $360 on February 14, 1941, and $400 on May 2, 1941, the former of which loans was to help finance the purchase of a pleasure automobile. Thus, the only changes in respondent's financial situation since he and petitioner agreed upon the $60 figure stem from his purchase and continued maintenance of a pleasure automobile and his remarriage.

In July, 1940, petitioner was, and she still is, a high school teacher receiving from board of education of the city of New York an annual salary of $4,500; she has a savings bank account of about $2,000; she has been maintaining the child at a private boarding high school and an expensive private summer camp at an aggregate yearly cost of $1,600; and for " Henry's " appendectomy in June, 1941, she incurred medical, surgical, nursing and hospital expenses of $700, of which there is still owing a balance of $250.

Time alone can demonstrate how " Henry " will have been conditioned by the concentration of the mother's affection and lavishing upon him what she believes superior educational and social advantages. Respondent protests that petitioner is rearing the child upon an unsound and extravagant scale, and it does seem one beyond the father's station, if not also the joint resources of both parents. But that is not an issue which need or may be determined in this support proceeding. (Cf. *Matter of Berman* v. *Berman*, 169 Misc. 921.) Any such controversy must be settled in the Nevada court under the above-quoted August 16, 1940 decree. (See *Ansorge* v. *Armour*, 267 N. Y. 492.)

Moreover, the question whether the child's delicate health and the standard of living to which petitioner has accustomed him will

constitute such " exceptional circumstances " as to warrant continuance of an order of this court, in any amount, beyond " Henry's," seventeenth birthday anniversary (October 18, 1942) need not be considered now nor unless and until appropriate future application be made pursuant to subdivision 4 of section 92 of the Domestic Relations Court Act of the City of New York. (See *Anonymous* v. *Anonymous*, 173 Misc. 679, 684. Cf. *Ziesel* v. *Ziesel*, 93 N. J. Eq. 153; 115 A. 435.) For today's order will expressly expire with the semi-monthly payment due October 16, 1942.

Unquestionably, the primary obligation for support of a minor child rests upon its father. (*DeBrauwere* v. *DeBrauwere*, 203 N. Y. 460. Cf. *Anonymous* v. *Anonymous*, 171 Misc. 644; 173 id. 679.) And the measure of such obligation is the child's present needs in relation to the *father's* present financial ability (*Mallina* v. *Mallina*, 167 Misc. 343; N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1), regardless of the mother's resources and the scale of living she may have arranged for the child. However, the just-cited statutory provision (quoted above) implies maintenance not merely at the bare subsistence level of public relief budgets but upon a standard commensurate with the father's economic condition. (Cf. *Prindle* v. *Dearborn*, 161 Misc. 95, 99.)

Sixty dollars a month toward the support of a delicate sixteen-year old son attending high school is not necessarily a disproportionately large share of a father's monthly gross salary of $280, nor even of his reduced net earnings of $226.12. And considerable weight must be accorded to the fact that the parents voluntarily settled upon that figure as recently as July 12, 1940. As above stated, the separation agreement is not conclusive in the instant proceeding; but its existence is strongly evidential and one of the very material " circumstances of the respective parties " under subdivision 1 of section 92 of the Domestic Relations Court Act of the City of New York. (Cf. *Second National Bank of Paterson* v. *Curie*, 116 N. J. Eq. 101, 110; 172 A. 560; Lindey on Separation Agreements, p. 237.)

However, it remains to consider whether the sixty-dollar figure, having been stipulated before respondent's remarriage, should be modified because of such remarriage.

On the question of the extent to which the issue of the first marriage must suffer from the father's assumption of new responsibilities by remarriage there is a surprising dearth of available authorities, and a conflict among them.

" In some cases the remarriage of a divorced husband has been held not to relieve him from the payment of alimony, since the claim of the divorced wife to his earnings takes precedence to that of the second wife and her offspring. This view has been especially

upheld where the remarriage was in contempt of the decree, although the contrary has been held, some cases holding that the fact that the husband had remarried and had a second family, or even that he wished to remarry, must be taken into consideration, along with other circumstances, as a ground for suspending the alimony." (17 Am. Jur. § 610, p. 476. See, also, cases collated at 30 A. L. R. pp. 79–81.)

*Ryer* v. *Ryer* (33 Hun, 116) held that as the former husband's inability to pay the alimony awarded seemed to have been caused by his remarrying in another State in direct violation of the provisions of the judgment of divorce, and was, therefore, voluntarily and intentionally created, such remarriage and the resulting new obligations constituted no excuse. (To like effect see *Levy* v. *Levy*, 149 App. Div. 561.)

" The defendant has since married. I assume he is supporting his present wife, but it is his first duty to support his first wife. First come first served." (*Peck* v. *Peck*, N. Y. L. J. Oct. 26, 1939, p. 1330; Sup. Ct., Special Term, Westchester County.)

On the other hand, in *Baxter* v. *Baxter* (256 App. Div. 892) the Appellate Division, Fourth Department, on January 11, 1939, held that " whether the court would grant the defendant leave to make application for a reduction of alimony, he having remarried in violation of its decree, was discretionary."

An essential element of the *ratio decidendi* in *Ryer* v. *Ryer* (*supra*) and *Levy* v. *Levy* (*supra*) is that the remarriage was in direct violation of the New York divorce decree — a factor not present here, since respondent's first marriage was dissolved by a Nevada court decree which expressly left both parties free to remarry. And there is logical force in the view that the court should look at the situation realistically as it exists and, *in a proper case*, direct that all parties who are entitled to support receive it in fair proportions. (Cf. *Krause* v. *Krause*, 282 N. Y. 355.)

The words " in a proper case " are used advisedly. Respondent, of course, knew, and presumably his second wife (a divorcee) also knew, of his prior obligation to his son and the recent agreement of sixty dollars a month as the measure of that obligation; respondent's present stringency is attributable in part to the cost of acquiring, and continuing to operate, a pleasure automobile; petitioner is carrying the heavy burden of the expense of the child's recent illness and is obligated, under the separation agreement, to save respondent harmless against those charges out of the stipulated monthly sum of sixty dollars; " Henry " is, so to speak, a first mortgagee upon respondent's earnings; and today's order covers a period of less than a year. Under all the circumstances, therefore, the twenty-five dollars a month which respondent desires to drop out of the July

12, 1940, stipulated figure of sixty dollars should, in justice, be provided for, instead, by closer budgeting of respondent and his wife or, if need be, by disposal of the automobile or additional New York city employees' retirement system loans.

Notwithstanding today's decision respondent is free to apply to the Nevada court for modification of the sixty-dollar monthly figure therein directed to cover the child's entire minority. (*Lewis* v. *Lewis*, 53 Nev. 398; 2 P. [2d] 131.)

No present weight is accorded to the fact that respondent's household now includes also a seven-year old child of his wife by a former marriage. The support of such child is the primary obligation of its father rather than that of the stepfather; the father is not relieved of such obligation by the mother's remarriage (*Anonymous* v. *Anonymous*, 171 Misc. 644; see *People ex rel. Wagstaff* v. *Matthews*, 168 id. 188; affd., 255 App. Div. 866); and in case of non-compliance with the provision for the child's maintenance contained in the divorce decree which enabled its mother to marry respondent, there are appropriate remedies both in the Supreme Court of the State of New York and the Family Court Division of this court.

For the foregoing reasons, respondent is hereby ordered and directed to pay into this court, for the support of the child named in the petition, until further order of this court, the sum of thirty dollars semi-monthly, on the 1st and 16th days of each month, beginning December 1, 1941; and, in addition, to pay on November 22, 1941, the temporary order sum installment of twelve dollars due November 22, 1941.

Today's order shall expire on October 17, 1942 (*i. e.*, end with the semi-monthly installment due October 16, 1942), with leave, however, to petitioner to apply, upon a proper showing of facts, for a further order beyond the child's seventeenth birthday anniversary pursuant to subdivision 4 of section 92 of the Domestic Relations Court Act of the City of New York, and with leave also to the child to file a " poor relative " petition in his own behalf under subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York, if so advised.

Notice shall be given to the parties pursuant to the subjoined direction.