"ETHEL J. JENKINS," Petitioner, v. "HENRY JENKINS," Respondent.*

Domestic Relations Court of New York, Family Court, New York County, July 8, 1942.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York.

*Joseph W. Zeller* for petitioner.

*Seymour L. Morse* and *Enos S. Booth* for respondent.

SICHER, J. There is presented a difficult and distressing situation which is not within the power of any court to solve adequately.

The parties are now aged spouses, who married nearly fifty years ago and have been living apart for upwards of forty years under a formal separation agreement executed on April 21, 1902.

That agreement stipulates support payments of twenty-five dollars a week, and it was fully performed up to February 3, 1941. Between that date and September 3, 1941, there were partial defaults and thereafter a total cessation of payments until entry of the temporary order (without prejudice) of seven dollars and fifty cents a week, beginning May 4, 1942, in the proceeding instituted in this court by petition filed April 30, 1942.

Respondent's defaults in the performance of that separation agreement resulted in the entry of a Municipal Court of the City of New York money judgment against him for breach of contract; and there are now pending in the City Court of the City of New York proceedings supplementary to execution upon that judgment.

After, and doubtless because, those proceedings were unproductive petitioner invoked the aid of the summary powers of this court of limited jurisdiction.

Such jurisdiction does not include the power to enforce a separation agreement *as such* nor does the existence of such an agreement necessarily entitle petitioner to the summary procedure and drastic remedies provided by Domestic Relations Court Act of the City of New York (L. 1933, ch. 482). (See *Johnston* v. *Johnston,* 177 Misc. 618, at 621, 622; cf. *Goldman* v. *Goldman,* 282 N. Y. 296.) At most, the existence of such an agreement is evidential and one of the " circumstances of the respective parties " under subdivision 1 of section 92 of Domestic Relations Court Act of the City of New York. (See *Johnston* v. *Johnston, supra,* 623.) And this particular agreement was entered into so long ago as to constitute negligible evidence of the " fair and reasonable sum " which respondent may be required at this time to contribute to petitioner under the provisions of sections 92 and 101 of the Domestic Relations Court Act (which contemplate *present* assets and earning capacity).

The passage of the years and consequent infirmities of old age have greatly altered the original situation.

On the other hand, the jurisdiction of this court is not precluded by the existence of such separation agreement, since it is not being now performed. It is well settled that a husband cannot invoke a separation agreement as a bar to a separation action in the Supreme Court of the State of New York if he has broken that agreement and his wife accepted such repudiation by instituting a matrimonial action. (See *Randolph* v. *Field,* 165 App. Div. 279; *Landes* v. *Landes,* 172 App. Div. 758; *Newport* v. *Newport,* 131 Misc. 851.) In my opinion, the same principle is applicable to a support proceeding in this court, whether or not petitioner be likely to become a public charge. (See *Matter of Wallach* v. *Wallach,* 241 App. Div. 803; *Matter of Fried* v. *Fried,* 244 App. Div. 788, leave to appeal denied 245 App. Div. 717; cf. *Yackeren* v. *Yackeren,* 249 App. Div. 507.) That is to say, it seems to me, the words " a separation agreement shall in no way preclude the filing of a petition * * * for the support of a wife who is likely to become a public charge " (N. Y. City Dom. Rel. Ct. Act, § 137, subd. 5, as added by L. 1942, ch. 762) should be construed as relating only to a separation agreement which is being duly complied with but which provides a sum inadequate to indemnify the community *fully* against the burden of maintaining the wife. It is therefore my view that if a husband shall have breached a separation agreement, such violation opens this court to a petition for support according to respondent's means and not merely on a " public charge basis " and that this court must then determine whether the circumstances are such as to

justify continuance of the husband's obligation, assumed upon the marriage, of supporting the wife " according to his means and station in life " (*Harding* v. *Harding,* 203 App. Div. 721, 722, affd. 236 N. Y. 514; cf. *Garlock* v. *Garlock,* 279 N. Y. 337, 340; N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1), or whether they are such as to reduce that obligation to the lesser one of merely indemnifying the community against the burden of her support as a public charge. (See *People* v. *McCarthy,* 257 N. Y. 567, affg. 139 Misc. 746; *Hodson* v. *Holmes,* 162 Misc. 226; *Matter of Aronowitz* v. *Aronowitz,* 159 Misc. 103; *Hodson* v. *Picker,* 159 Misc. 356.)

For the reasons hereinafter set forth the foregoing distinction between those two measures of support is at this time largely academic, since the order entered today is for little more than the equivalent of the low subsistence level of a " public charge basis " liability, even though it rests in part upon exercise of the power " to order support of a wife  *  *  *  irrespective of whether " she " is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. 1.) For, those " circumstances " here include the advanced age and impaired health and earning capacity of respondent.

Upon all the evidence I hold that petitioner is entitled to support both under the provisions of subdivision 1 of section 92 of the Domestic Relations Court Act of the City of New York and also on the further ground that she is now likely to become a public charge unless respondent discharge, insofar as he can, the deep-rooted obligation of a husband to afford support to his wife which " continues as long as the marriage relation is not dissolved or limited by a decree of divorce or separation." (*People* v. *Schenkel,* 258 N. Y. 224.)

Respondent has not sustained his contention that the home of the daughter of the parties is a ready and costless haven for petitioner; on the contrary, the evidence indicates that such daughter would, and perhaps could, receive and care for petitioner only upon contribution of ten dollars a week. Moreover, the legal obligation of a daughter to afford support to a needy mother is secondary to the primary obligation of a husband; it may be invoked by the Department of Welfare in the event of an appeal for Old Age Assistance or Home Relief but not by the husband in self-exoneration.

Concededly, petitioner is unable to maintain herself by her own efforts and has no remaining assets.

The sole remaining, and baffling, question for determination is the extent of respondent's present ability to discharge his support duty toward the petitioner. And in arriving at some answer weight must be accorded to certain further principles, namely:

(1) The statutory presumptions that "a respondent shall, *prima facie,* be presumed to have sufficient means to support his wife * * * and a dependent adult without means to maintain himself shall be presumed to be likely to become a public charge" (N. Y. City Dom. Rel. Ct. Act, § 131);

(2) A husband is chargeable with the support of his wife not merely on the basis of his actual means or earnings but upon his potential earning capacity or income (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1; see *Anonymous* v. *Anonymous,* 22 N. Y. S. 2d 432, 438-440 and cases cited);

(3) Contributions, though in the nature of gratuities or loans from friends, when and as received by a husband, constitute income for purposes of the Domestic Relations Court Act of the City of New York (cf. *Bergman* v. *Buechler,* 249 App. Div. 553);

(4) Conversely, "it is quite conceivable that an order may be made for the support of dependents which is not adequate because of the inability of the person chargeable to meet an adequate order. *The ability of the respondent, as well as the need of a dependent, may govern the amount of the order*" (italics supplied; *Domb* v. *Domb,* 176 Misc. 409, at 410-411); moreover, in *City of New York (Sullivan)* v. *Sullivan* (246 App. Div. 55) the Appellate Division, First Department, ruled that in fixing a support award for a wife the Domestic Relations Court of the City of New York must take into account respondent's advanced years and the amount of money he may need for his own support when he is no longer able to work gainfully.

There can be no doubt of petitioner's sore need and the hardship, if, indeed, not the impossibility, of her drastically readjusting her already modest scale of living.

But it is equally clear that respondent is also grievously ill; that he can move about only on crutches and in taxicabs and requires assistance in dressing; that his hospital and surgical care last year were provided by a group of friends; that his continued activities on the X Exchange are also largely dependent on the bounty and indulgent cooperation of colleagues. Nevertheless, despite his hospital sojourn, his earnings during 1941 were sufficient to require payment of a small Federal income tax; insofar as could be gleaned by an investigator of this court

from respondent's informal records, his weekly net earnings for the calendar year 1941 averaged twenty-six dollars and thirty-one cents and for the first four months of 1942, twenty-two dollars and ninety-one cents; and he still has potential earning capacity as one of the oldest members of the X Exchange. True, his scale of living, both as a matter of lifelong habit and because of his present infirmities, is doubtless beyond his scale of earnings. However, he has somehow contrived to meet the temporary order of this court, and it is not beyond the bounds of reasonable probability that he could manage to contribute to petitioner the sum hereby ordered, namely, twelve dollars and fifty cents a week, beginning July 13, 1942.

It is realized that, on the one hand, such sum may be difficult for respondent to raise and, on the other hand, is hardly adequate for petitioner. But it is earnestly hoped that by mutual acceptance of that figure and regular payment thereof there may be avoided " poor relative " proceedings against the daughter and granddaughter, at the instance of the Department of Welfare (under N. Y. City Dom. Rel. Ct. Act, § 101, subd. 4, and § 92, subd. 3), and respondent's X Exchange membership may be salvaged so as to enable him to continue his lifelong occupation and also to preserve for petitioner and the daughter the respective death benefits of such membership; and that petitioner may be able to supplement such contributions by financial and other assistance from the daughter.

For the foregoing reasons, respondent is hereby ordered and directed to pay into this court the sum of twelve dollars and fifty cents weekly, each and every week, beginning with July 13, 1942, for the support of the dependent named in the petition, until further order of the court.

Notice shall be given to the parties pursuant to the subjoined direction.