DELIA SCHACHT, Petitioner,* *v.* MYRON SCHACHT, Respondent.

Domestic Relations Court of the City of New York, Family Court, Queens County, May 15, 1946.

*Lawrence S. Timen* and *Emil H. Wasserberger* for petitioner proceeding on behalf of Kenneth Schacht.

*Hobart S. Bird* for respondent.

SICHER, J. For reasons set forth in the earlier opinion (*Schacht* v. *Schacht,* 58 N. Y. S. 2d 54), this court on August 1, 1945, overruled respondent's objections to its jurisdiction and narrowed the scope of subsequent hearings to the single issue of the " fair and reasonable sum according to his means " which respondent should be required to contribute to the petitioner-child's support. Consequently, the doctrine of " law of the case " would be a sufficient answer to the now reiterated contention that this court is without power to order such support in any sum whatever because an April 6, 1944, separation agreement between the parents and a June 21, 1944, Nevada divorce decree incorporating such agreement provided that the respondent father should have custody of Kenneth and, inferentially, the correlative duty to maintain him only in the father's home.

An additional ground for rejection of such plea is that it disregards also Supreme Court Justice DALY's July 27, 1945,

determination that Kenneth's welfare called for dismissal of the habeas corpus writ sought by the father and for change of custody to the mother. (See *People ex rel. Spreckels* v. *deRuyter*, 150 Misc. 323; *Matter of Bull* [*Hellman*], 266 App. Div. 290, 291, affd. 291 N. Y. 792; *Matter of Young* v. *Roe*, 265 App. Div. 858, affd. 290 N. Y. 823; *People ex rel. Schacht* v. *Schacht*, 62 N. Y. S. 2d 487.) Decisions of the genre of *Haskell* v. *Haskell* (201 App. Div. 414, affd. 236 N. Y. 635) and *Duryea* v. *Bliven* (122 N. Y. 567) are, therefore, not at all in point; for those were mere breach of separation agreement actions predicated solely on the doctrine of the mutual dependency of promises in a bilateral contract and involved no question of the effect of a custody or other court order or judgment (see "*Almandares*" v. "*Almandares*", 186 Misc. 667, 673).

"It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents for causes of which they are innocent and by proceedings to which they are not parties. The legal and natural duty of the father to support his children is not to be evaded by him * * * on the ground of any dissensions whatsoever with his wife. A natural father would not think of doing so, and an unnatural one should not be permitted to do so." (17 Am. Jur., Divorce and Separation, § 693, p. 529.)

"However, a failure of provision for the maintenance and support of minor children in the divorce decree does not absolve the father from his duty to provide for them, for, while the decree of divorce dissolves the marital relations of the parties, it did not divorce the father from his child or dissolve his liabilities to it." (Carmody on New York Pleading and Practice [2d ed.], § 1194, p. 293, citing *Laumeier* v. *Laumeier*, 237 N. Y. 357. Accord, *Anonymous* v. *Anonymous*, 171 Misc. 644; *White* v. *White*, 154 App. Div. 250; *Pretzinger* v. *Pretzinger*, 45 Ohio St. 452.)

Nevertheless, the Supreme Court lacks power to order support in a habeas corpus custody proceeding. (See *Application of MacAlpine*, 50 N. Y. S. 2d 232, and cases therein cited, affd. *sub nom. People ex rel. MacAlpine* v. *MacAlpine*, 267 App. Div. 952; *People ex rel. Geismar* v. *Geismar*, 184 Misc. 897, 911.) Nor can the Supreme Court entertain a petition in equity for future support of a child (see *Matter of Bedrick* v. *Bedrick*, 151 Misc. 4, affd. 241 App. Div. 807; *Moen* v. *Thompson*, 186 Misc. 647). Accordingly, since there is neither pending nor possible in the Supreme Court of the State of New York a matrimonial action between Kenneth's Nevada-divorced parents, the mother's sole remedy in his behalf in this State

would be either the instant proceeding (see *Schacht* v. *Schacht,* 58 N. Y. S. 2d 54, *supra*) or one or more actions at law to recover a money judgment for past expenditures. (See *Taffit* v. *Taffit,* 162 Misc. 759; *Laumeier* v. *Laumeier,* 237 N. Y. 357, *supra*; *Whitton* v. *Schultz,* 265 App. Div. 583; cf. *Swanton* v. *Curley,* 273 N. Y. 325.)

So, it is regrettable that the copious brief of respondent's attorney is mainly concerned with the previously adjudicated issue of jurisdiction. It is likewise regrettable that petitioner's attorneys still press their client's plea for the maximum sum within the jurisdiction of this court to award. Unfortunately for the child, this proceeding has developed into another major battle between litigious parents having zealous counsel experienced, indefatigable and persistent in partisan advocacy (to the point even of projecting towards each other the principals' asperity) but unable to make their respective clients realize that in the long run Kenneth will be the loser from the acrimonious conflicts here and in the Supreme Court. In self-respect the mother and father should have heeded this court's urging that they reach a reasonable agreement concerning their adolescent son's maintenance, and each will now doubtless be dissatisfied with today's order, entered upon the voluminous record necessitated, on the one hand, by petitioner's unyielding demand for an excessive award and, on the other hand, by the unusual circumstances of respondent's family-corporation-employment and his limited personal knowledge of the relevant financial facts.

The governing legal principles are well established.

In New York State the primary obligation for support of a minor child rests upon its father, regardless of the earnings or other resources of the mother (*De Brauwere* v. *De Brauwere,* 203 N. Y. 460). And the measure of such obligation is the child's needs in relation to the father's ability to provide and his station in life (see " *Johnston* " v. " *Johnston* ", 177 Misc. 618, 623; *Prindle* v. *Dearborn,* 161 Misc. 95, 99; cf. *Garlock* v. *Garlock,* 279 N. Y. 337, 340).

The net of the mass of decisions dealing with a variety of particular circumstances is tersely summarized thus: " The legal duty of a parent to support his minor children is affected by many considerations. His health, his means, his station in life, as well as similar considerations on the part of the child, have a bearing upon it. Although he is bound to furnish support while his legal obligation continues, if of sufficient ability, it is the duty of the parent only to do the best he can to support

his child in the manner suitable to his station and circumstances. The tests of the parent's ability to furnish adequate support are ordinarily comparative rather than absolute. The relative size of the income or means of the parent and of the child must be considered, as well as the number of persons dependent on the father for support, and other items of expense or other demands to be met out of the father's means * * *.'' (39 Am. Jur., Parent and Child, § 36, p. 636.)

Kenneth attained the age of fifteen years on August 20, 1945. He is an intelligent, healthy lad, reared on a very comfortable, if not lavish, scale, including generous spending allowances, winter vacations in Florida, and summers at the seashore. But whether or not those standards were high for respondent's income even while the family was still united, downward changes and sacrifices all around are usually the inevitable sequel of divorce and the new burden of maintaining two households. True, the children of a prior marriage are in a sense first mortgagees of the father's resources. But the court must look realistically at the whole situation and neither over-favor nor unduly deprive any one among the several dependents for whose support a respondent is legally chargeable. (See '' *Johnston* '' v. '' *Johnston* '', 177 Misc. 618, 623–624, *supra*.)

In this instance, besides a second wife and her young child whom respondent has formally adopted, he has another minor son (Kenneth's brother Robert), whom, with the mother's approval, he is putting through an engineering college at an annual charge of $2,400; and the Nevada divorce decree requires respondent to pay Kenneth's mother the monthly sum of $100 for herself as alimony and an additional $100 for the daughter Myrna. Weight must be accorded to those circumstances as well as to the fact that Kenneth's moving into his mother's home did not increase the rental of the apartment she had been, and still is, occupying with Myrna. So, this court must be circumspect that the amount of its order for Kenneth's support should not be such as either to shift to the mother any part of the father's primary duty or to include by indirection an additional alimony allowance for her personally. For, the mother's insistence upon an award of $50 a week for Kenneth's maintenance is not sustained with convincing figures, and it is manifestly motivated in part by resentment at respondent's remarriage. On the other hand, respondent is ungenerous in venting on Kenneth the father's indignation at the mother's attitude towards himself and the second

Mrs. Schacht. Also, he overlooks that if Kenneth had remained in his home there would be the identical expense for adequate clothing, education and reasonable entertainment as well as the costs of items the mother must now provide, such as food, laundry and incidentals proper for an adolescent boy of these parents' social station.

The father had moved away from the mother and their three children in December, 1941. At first he contributed only $200 a month for the support of those four, but that sum was shortly increased to $250 and continued until the execution of the April 6, 1944, separation agreement which provided $100 for the mother personally and $100 to her for Myrna, and also provided for the father's maintenance of the two sons.

From January 1, 1942, to January 1, 1945, respondent's annual *gross* compensation from Schacht Steel Construction Co., Inc., subject to withholding and other tax deductions, had been: In 1942, $8,500; in 1943, $10,500 (apart from $1,500 for '' expense moneys '' turned over by him to his brother Lawrence); and in 1944, $11,563.22 (apart from $3,000 for '' expense moneys '' turned over by him to his brother Lawrence).

On October 22, 1944, Kenneth left the father's home for the mother's. At a November 14, 1944, intake interview in this court the mother related the terms of the Nevada divorce decree and respondent's compliance with the money directions therein and requested that he be required by this court to contribute toward Kenneth's support the *same amount* as for Myrna. Upon failure of a November 20, 1944, conference with respondent to effect an adjustment accordingly, formal petition for Kenneth's support was filed; and on December 1, 1944, both parties attended before Justice MAGUIRE, who indorsed on the petition: '' Respondent states he will take case to the Supreme Court for custody of the child. States he will give petitioner $50 a month beginning today for support of the child (without prejudice) and buy all necessary clothes. Adjourned to 1/19/45.''

Not until June 22, 1945, did petitioner return to court, when she asked that the proceedings be revived and for the first time demanded the maximum award of $50 a week. Meanwhile, respondent had paid the $50 monthly sums direct, expended a few hundred dollars for Kenneth's dental needs, and also furnished some clothing, although not satisfactory to the mother nor fully commensurate with the growing lad's reasonable needs.

Meanwhile, also, on January 27, 1945, the mother had instituted in the Supreme Court, Queens County, an action against the father praying that the afore-mentioned separation agreement be declared null and void for fraud in inducing its execution and because of the asserted inequity and inadequacy of its provisions, the complaint alleging that " defendant is possessed of property of the value of at least $75,000. and, upon information and belief, the defendant earns $35,000. per annum and did earn in the years 1943 and 1944 the said sum."

On March 9, 1945, a summary judgment was entered dismissing that complaint on the ground that because the separation agreement was incorporated in the decree of divorce the issues tendered by the New York Supreme Court action complaint had been conclusively adjudicated in Nevada. (*Schacht* v. *Schacht*, 54 N. Y. S. 2d 515, *supra*.) But on March 18, 1946, that disposition was reversed by the Appellate Division, Second Department, with leave to defendant to answer (*Schacht* v. *Schacht*, 270 App. Div. 850). However, two Justices dissented on the ground that (p. 851) " To declare the agreement a nullity, assuming plaintiff were to prevail, would give rise to no rights in the plaintiff in respect of support other than those contained in the divorce decree which she obtained. To have her rights increased she must have the decree modified. Nullifying the agreement would be a futility in respect of the practical and final objective which she must attain to obtain any benefits. The place to accomplish the nullification of those provisions is in the State where the judgment was entered and which incorporated the agreement therein." And the majority opinion also recognizes that (p. 850) " the Nevada judgment will not be affected by any judgment which may be entered in this action." So, today's order assumes that respondent is required to pay only $200 a month pursuant to the Nevada decree. When and if such requirement be changed, the order for Kenneth, if then still operative, may be modified in the light of such new circumstance. (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [16]; see *Anonymous* v. *Anonymous*, 173 Misc. 244, 247; *Anonymous* v. *Anonymous*, 22 N. Y. S. 2d 432, 436; *Matter of Wignall* v. *Wignall*, 163 Misc. 910.)

Respondent's income and capital were the subject of three lengthy hearings. It appeared that respondent has for years been employed by a family corporation which is in practical effect a copartnership between him and a brother; and that, although its secretary and treasurer, respondent is unfamiliar with the corporation's financial structure and operations, the

nature of his stock interest therein, and even of the precise amount of his compensation for services, drawings and expenses, frankly conceding that he relies implicitly on that brother and an accountant in all matters relating to his personal finances as well as those of the corporation.

That necessitated the production of many records and the extensive testimony of that brother and of an accountant as well as of respondent, wide latitude of examination being allowed to counsel.

Schacht Steel Construction Co., Inc., is a closed corporation, operated by a brother (Lawrence) and respondent virtually as if a copartnership comprised only of themselves as equal partners drawing elastic but identical salaries. There was in the evidence some confusion and only a partial disclosure concerning the issuance of and consideration for certain preferred stock, the pledging of respondent's 45% common stock interest to Lawrence, and the precise amount, origin and maturity of the alleged indebtedness so secured. But for purposes of today's order those phases lack the sinister significance urged by petitioner's attorneys. Whatever might be their relevance in the action to set aside the separation agreement or in a proceeding under section 18 of the Decedent Estate Law, or a judgment creditor or bankruptcy proceeding, they have little bearing on the question of the amount which respondent can, and should, contribute toward Kenneth's current maintenance. On the one hand, unmarketable stock in such a family corporation is hardly an available source of ready cash; on the other hand, any disparity between respondent's stock interest and Lawrence's has effected no change in the arrangements whereby the brothers draw equal salaries. Similarly, in view of the indefiniteness of the evidence as to respondent's personal indebtedness to his brother Lawrence and the marked fraternal complaisance concerning repayment, such indebtedness does not constitute a material factor in the determination of the fair and reasonable amount respondent should be required to contribute for Kenneth's support during the twenty-five months' period covered by today's order. (Cf. *Amato* v. *Amato*, 45 N. Y. S. 2d 371, 373–375.)

No dividend has ever been declared upon any stock of the Schacht Steel Construction Co., Inc., and neither brother has had an employment contract. Instead, part of the annual profits have been retained to expand the business and the balance distributed as equal salaries in such amount as Lawrence, in his absolute discretion, from time to time sets as a proper balance

between the welfare of the business and the personal require-ments of the two brothers. It is undisputed that he is the sole arbiter in that area; in his words, "He [respondent] always says he wants more money, and I say he can't have it."

Starting with only $1,500 a year, such annual salaries had been gradually increased to the peak of $16,549.50 for 1945. But termination of United States Government war contracts after V-J Day renders uncertain the company's future; at the final hearing there was intimation of a then contemplated refinancing which would include setting the annual salary of each brother at a maximum of $10,000. So, today's order takes into account both respondent's exceptional income for 1945 and the probable drop thereafter.

*Anonymous* v. *Anonymous* (22 N. Y. S. 2d 432, *supra*) dealt with a very different situation. That was a case of manipula-tion of a family corporation by a husband to cut his own salary, not as a bona fide business necessity but as a collusive maneu-ver in the litigation with his wife. The evidence established that the respondent therein, although not a record stockholder, was actually in complete control and had devised a pretended reduction of his salary to less than the compensation of sub-ordinate employees and below the reasonable value of his serv-ices to the family corporation under his domination. In the case at bar there is no suggestion of any such manipulated diminution of respondent's earnings. On the contrary, it appears that respondent's employment elsewhere would be much less lucrative than his association with a better educated and abler brother who energizes the family corporation busi-ness and also lets respondent participate in occasional outside ventures. Unlike him, respondent is not a graduate engineer and, having no technical training or particular skill, is largely dependent on his brother's leadership. There are also the fur-ther adverse factors of respondent's gambling proclivities and impaired health.

It has been understood that today's order would be retro-actively effective as of June 29, 1945, the date of the first hear-ing after revival of this proceeding (cf. *McCarthy* v. *McCarthy*, 143 N. Y. 235). And, because of the long duration of the hear-ings it was suggested that respondent make some interim direct payments on account; also, at the March 2, 1946, hearing respondent was expressly advised that he would be expected to pay within ten days after entry of the final order the entire balance of any accruals thereunder.

For the foregoing reasons, after intensive study of the minutes, exhibits and briefs, and personal research, the court finds that respondent is chargeable with support as alleged in the petition; and respondent, therefore, is hereby ordered and directed to pay into this court the sum of $125 each and every month, beginning on and as at June 29, 1945, and continuing up to and including the installment in that amount accruing July 29, 1947, for the support of his dependent son Kenneth, or until further order of the court. All of the first twelve such monthly installments, accrued up to and including May 29, 1946, totalling $1,500, respondent is directed to pay on or before May 29, 1946, less the amount of such interim direct payments he will have already made on account of such accruals, which respondent's attorney reports as having aggregated $450 up to April 16, 1946.

The next monthly sum shall fall due on June 29, 1946, and the like amount on the 29th day of each month thereafter up to and including July 29, 1947.

Today's order shall expire on August 19, 1947 (i.e., end with the monthly installment due July 29, 1947), without prejudice, however, to Kenneth's rights to a further order beyond his seventeenth birthday anniversary upon a proper showing of facts justifying such extension under subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York (see " Johnston " v. " Johnston ", 177 Misc. 618, 625, supra, and " Johnston " v. " Johnston ", 180 Misc. 741), or upon a written agreement of the parties (see Monroe v. Monroe, 52 N. Y. S. 2d 647), or in the event that meanwhile the Legislature will have granted to this court the power to order support during the entire minority of every child comparable to the jurisdiction already granted to analogous courts outside the city of New York governed by county Children's Court Act (L. 1922, ch. 547; § 30-a, subd. 4; § 31, subds. 1, 2, 6, as added by L. 1942, ch. 810 and amd. by L. 1945, ch. 849).

Petitioner's application for an undertaking is at this time denied, with leave to renew, however, in the event of respondent's default in compliance with today's order. I am loath to believe that respondent will not duly comply with such order without the requirement of security therefor. However, in the event of default a cash bond in substantial amount is indicated.

Notice shall be given to the parties pursuant to the subjoined direction.