" PEARL MOONEY ", on Behalf of " RALPH MOONEY ", Petitioner, *v.* " FRANK MOONEY ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Queens County, October 2, 1946.

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*Leo A. Greenbaum* for petitioner.

*Joseph P. Carey* for respondent appearing specially.

SICHER, J. Jurisdictional objections to an attempted proceeding in this court against a divorced father for an order of support of his schoolboy son reveal gaps in the New York law governing the enforcement of the deep-rooted paternal duty to maintain and educate minor children.

The petitioner child ("Ralph") attained the age of seventeen years on June 29, 1946. Thereafter, on September 10, 1946, a support petition was filed in his behalf by his mother, purportedly pursuant to subdivisions (11) and (12) of section 2, section 111, subdivision (2) of section 29, subdivision (1) of section 91, subdivisions (1), (2), (3) and (4) of section 92, subdivision 1 of section 101 and subdivision 1 of section 103 of

the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

A final decree of divorce on the ground of extreme cruelty had been duly granted to the mother by the Court of Chancery of the State of New Jersey on April 16, 1943.

It has been stipulated that such decree is entitled to full faith and credit in the State of New York. However, the provisions in it relating to "Ralph's" support would not be conclusive and binding on "Ralph" in this proceeding if there existed subject matter jurisdiction to enter any order herein. (See *Scrima* v. *Scrima*, 265 App. Div. 483; *Stone* v. *Stone*, 44 N. Y. S. 2d 558; *Schacht* v. *Schacht*, 58 N. Y. S. 2d 54; *Moen* v. *Thompson*, 186 Misc. 647, 650; *Matter of Lindgren*, 293 N. Y. 18; *James* v. *James*, 59 N. Y. S. 2d 460.)

It has been stipulated also that the respondent father is now, and at the time of the filing of the petition was, residing and domiciled in the city of New York, and "Ralph" simultaneously residing and domiciled in X-town, New Jersey.

The afore-mentioned decree awarded to the mother the custody of "Ralph" and of another child ("Richard"), and further ordered the defendant (respondent here) to pay $25 a week from and after January 1, 1943, "as and for the support and maintenance of the plaintiff and the infant children of said marriage in her custody".

"Richard" has attained his majority. But "Ralph" is seventeen years and three months old and still attending public high school at X-town, New Jersey; and he and his mother desire that he continue there until his expected graduation in June, 1947.

The father has removed from New Jersey to New York City, and has not fully complied with the alimony directions in the divorce decree. His arrears, accrued to January 1, 1946, have been fixed by the Court of Chancery of New Jersey at $1,647.60; and on September 5, 1946, Mr. Justice PARELLA ordered the entry of a summary judgment of the City Court of the City of New York against him in the sum of $1,324.60 on account of those arrears.

However, since that New Jersey divorce decree was on a ground for which a divorce could not be procured in this State, its alimony provisions are enforcible in New York only by money judgment and not also by contempt or sequestration (*Miller* v. *Miller*, 219 App. Div. 61. affd. 246 N. Y. 636; *Hardy* v. *Hardy*, 136 Misc. 759); and any such judgment may include only arrears already irrevocably accrued under such sister

State decree (see *Gillespie* v. *Gillespie*, 186 Misc. 845; *Sistare* v. *Sistare*, 218 U. S. 1).

And, since a new matrimonial action between the divorced parents is not possible in New York, there could be no recourse to the Supreme Court of the State of New York in "Ralph's" behalf for a prospective order of support. For that court is without jurisdiction to entertain an independent petition for support but can order support solely as an incident to a matrimonial action. (*Matter of Bedrick* v. *Bedrick,* 151 Misc. 4, affd. 241 App. Div. 807; *Moen* v. *Thompson,* 186 Misc. 647, *supra*; *Schacht* v. *Schacht*, 58 N. Y. S. 2d 54, 61, *supra*.) Even in a habeas corpus custody proceeding the Supreme Court of the State of New York lacks power to order support. (See *Application of MacAlpine*, 50 N. Y. S. 2d 232, and cases therein cited, affd. *sub nom. People ex rel. MacAlpine* v. *MacAlpine*, 267 App. Div. 952; *People ex rel. Geismar* v. *Geismar*, 184 Misc. 897, 911.)

Accordingly, "Ralph's" mother now seeks for him a prospective support order, and invokes the summary, costless procedure, of this statutory court as a forum on which the Legislature has conferred certain "Jurisdiction within the city to hear and determine all proceedings to compel the support of a wife, child or poor relative" (N. Y. City Dom. Rel. Ct. Act, § 91, subd. 1). However, since this is a statutory court of enumerated powers, any such order is allowable only within the scope of the legislative grant (see *Kemp* v. *Kemp,* 172 Misc. 738; "*Johnston*" v. "*Johnston*", 177 Misc. 618).

Said jurisdiction of the Family Court Division of this court includes the following relevant powers: "(1) To order support of a * * * child * * *, irrespective of whether * * * [he] is likely to become a public charge, as justice requires having due regard to the circumstances of the respective parties." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [1].)

"(2) To include in the requirements of an order for support the providing of necessary shelter, food, clothing, care, medical attention, * * * the expense of educating his child * * * and other proper and reasonable expenses." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [2].)

"(3) To require of persons legally chargeable with the support of a * * * child * * * and who are possessed of sufficient means or who are able to earn such means, the payment weekly, or at other fixed periods, of a fair and reasonable sum for such support, or as a contribution towards such support, according to the means of the persons so chargeable; provided,

however, that the amount that the court may require a respondent to pay for the support of the petitioner shall not exceed fifty dollars a week." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [3].)

" (4) To make all orders for support run until further order of the court, except that *orders for support of a child shall run until the child is seventeen years of age;* or, where there are physical or mental disabilities of the child or other exceptional circumstances that warrant it, in the discretion of the court during such period after seventeen years and beyond the child's minority as such physical or mental disabilities or other exceptional circumstances may continue." (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [4].)

" 1 A husband is hereby declared to be chargeable with the support of his * * * children and, if possessed of sufficient means or able to earn such means, may be required to pay for their support a fair and reasonable sum according to his means, as may be determined by the court." (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1.)

" 1 A * * * father * * * may be required to furnish support * * * if, (a) he * * * is residing or domiciled in the city at the time of the filing of the petition for support." (N. Y. City Dom. Rel. Ct. Act, § 103, subd. 1.)

Other pertinent provisions of the statute are:

" § 2. *Definitions.* Certain words as used in this act have the following meaning for the purposes thereof: * * * (5) City means the city of New York. * * * (11) The person for whom support is asked shall be known as the petitioner.

". (12) The person legally chargeable with the support of a wife, child or poor relative shall be known as the respondent.

" (13) *Child means a person actually or apparently under sixteen years of age.*

" (14) Adult means a person sixteen years of age or older." (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 2, subds. [5], [11], [12], [13], [14].)

"4 The parents * * * of a *dependent person over seventeen years of age,* who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative." (Italics supplied.) (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 4.)

The respondent father, appearing specially, moves to dismiss the petition for lack of jurisdiction of the subject matter.

His principal ground is that the statute does not authorize the filing of a petition for the support of a son or daughter who has already attained the age of seventeen years, except only as a " poor relative " under subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York.

Concededly, such " poor relative " petition would not lie in " Ralph's " behalf, because he has been residing and domiciled in X-town, New Jersey, continuously since the divorce decree awarded his custody to the mother (see *Matter of Thorne*, 240 N. Y. 444), and at no time has he been a resident of the city of New York (one of the requirements of N. Y. City Dom. Rel. Ct. Act, § 101, subd. 4).

Accordingly, the asserted basis for the petition in controversy is solely the above-quoted concluding clause of subdivision (4) of section 92 of the Domestic Relations Court Act beginning with " or," and extending through " or other exceptional circumstances may continue ", which words enlarge in stated respects the immediately preceding limiting phrase, " orders for support of a child shall run until the child is seventeen years of age ".

Analysis of the Domestic Relations Court Act of the City of New York as a whole and of cognate enactments in the light of the below-described principles of statutory interpretation constrains the sustaining of respondent's contention that such enlarging clause contemplates the continuance, beyond the seventeenth-birthday anniversary of a child embraced therein, only of a support order already entered before a child's seventeenth-birthday anniversary and does not authorize the initial entry of an order upon a petition first filed after the support beneficiary has attained the age of seventeen years.

The Domestic Relations Court of the City of New York was created on October 1, 1933, as a new civil court (*Matter of Kane* v. *Necci*, 269 N. Y. 13) by chapter 482 of the Laws of 1933 (known and cited as the " Domestic Relations Court Act of the City of New York "). Section 3 of that enabling statute provides that the court thereby established " shall succeed to all the powers and jurisdiction of the children's court of the city of New York " — which had been functioning as a separately organized court since September 15, 1924 (L. 1924, ch. 254) — " and of that part of the magistrates' court system of the city of New York known as the family court . * * *." (See *Matter of Franklin* v. *Franklin*, 295 N. Y. 431, 435.) Such predecessor

Family Court part of the Magistrates' Court system had dealt with those chargeable with the support of wives, children and " poor relatives " under its criminal jurisdiction over " disorderly persons " conferred by the then Inferior Criminal Courts Act (L. 1910, ch. 659, as amd.), particularly section 74. And both section 3 of that Inferior Criminal Courts Act and section 1 of the aforesaid Children's Court Act of the City of New York (L. 1924, ch. 254) contained definitions of the words " child " and " adult " substantially identical with the above-quoted subdivisions (13) and (14) of section 2 of the Domestic Relations Court Act of the City of New York, viz.: " Child means a person actually or apparently under sixteen years of age " and "Adult means a person sixteen years' of age or older."

So, when originally enacted (L. 1933, ch. 482) subdivision (4) of section 92 of the Act contained the word " sixteen " instead of " seventeen ", and in subdivision 4 of section 101 a " poor relative " was described merely as " a dependent adult ".

As the powers of the predecessor Family Court to order support of a " child " extended only to the age of sixteen years and there are identical definitions of the word " child " in both the predecessor and the successor statutes, subdivision (4) of section 92 of the Domestic Relations Court Act read in connection with the aforesaid subdivisions (13) and (14) of section 2 of the Act and subdivision 1 of section 91 manifests a legislative intent originally to authorize the Family Court Division of the newly created Domestic Relations Court of the City of New York to entertain a proceeding for support only of a " child " who came within the definition of being " actually or apparently under sixteen years of age."

Controlling canons of statutory interpretation are: " § 97. *All parts to be construed together.* It is an important rule of interpretation that all parts of an act are to be read and construed together to determine the legislative intent. * * * And though a statute is divided into many sections, each section is to be construed in connection with the others, and each is to be kept in subservience to the general intent of the whole enactment. * * * " (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 97, pp. 160, 167.)

" § 98. *All parts to be harmonized.* One of the general rules in the interpretation of statutes is, that, if possible, all parts of an enactment shall be harmonized with each other as well as with the general intent of the whole enactment. This rule is closely allied to the general principle that all parts of a statute shall be read together. In fact, the two rules seem to be but

little more than different expressions of the same canon of interpretation. Inconsistency in the same statute is thought to be contrary to the intent of the lawmakers, and hence it is to be avoided. Thus, generally a particular provision of an act is not to receive a special meaning at variance with the general purpose and spirit of the act. * * * " (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 98, pp. 169–171.)

" § 231. *Every word to be given effect.* It is an established canon in the interpretation of statutes that all parts of an act are to be construed together and harmonized, if possible. To reach this end it is a general rule that every part of the act is to receive some consideration in determining its meaning. * * * " (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 231, p. 290.)

" § 222. *Earlier statutes in pari materia.* When enacting a statute the Legislature is presumed to act with deliberation and with knowledge of the existing statutes on the same subject, and earlier statutes are therefore properly considered as illuminating the intent of the Legislature in passing later acts, especially where there is doubt as to how the later act should be construed. In other words, a particular statute is construed with reference to earlier statutes *in pari materia* * * *. It is incumbent on the court, in searching for the proper interpretation of an enactment, to refer to the prior state of the law upon the matter. * * * " (McKinney's Cons. Laws of N. Y., Book 1, Statutes [1942 ed.], § 222, pp. 287–288.)

As above indicated, the Family Court Division of this successor court was created on October 1, 1933, and implemented with summary machinery for fixing the amount (up to a maximum of $50 a week) and enforcing collection, of support for wives, children and " poor relatives ". But the creating statute carried over from the predecessor Family Court statute (Inferior Criminal Courts Act) its definition of " child " and the consequent sixteen-years-of-age expiration date of each support order for a " child " and did not adopt the common-law doctrine, applied in Supreme Court matrimonial litigation, which imposes upon each father a duty of support until the child's twenty-first birthday anniversary.

By chapter 726 of the Laws of 1937 (eff. Oct. 1, 1938), the Legislature amended subdivision (4) of section 92 of the Domestic Relations Court Act by changing " sixteen years " to " seventeen years " and simultaneously amended subdivision 4 of section 101 of the Domestic Relations Court Act by changing the words " dependent adult " to "dependent person over

seventeen years of age ". Such amendments doubtless took cognizance of chapter 789 of the Laws of 1936, which amended the Education Law (that had till then set sixteen years as the maximum compulsory instruction age) by empowering the Board of Education in each city of the State to require minors from sixteen to seventeen years of age who were not employed to attend upon full-time day instruction (Education Law, art. 23, § 621, subd. C).

The above-described 1937 amendment of subdivision 4 of section 101 of the Domestic Relations Court Act simultaneously with the amendment of subdivision (4) of section 92 of the Domestic Relations Court Act conferred, or at least clarified, authority to entertain a " poor relative " petition for the support of a dependent who was still a minor but had attained the age of seventeen years. (See Bulletin No. 335, 1937, Committee on State Legislation of the Association of the Bar of the City of New York.)

Those two 1937 amendments did not include any change in subdivisions (13) and (14) of section 2 of the Act definitions, of " child " or " adult " and might, therefore, possibly leave open to doubt the Family Court's right to include in a petition, under section 92 of the Act, or accept a separate petition for, a child sixteen years of age but not seventeen or over. But regardless of whether such doubt may not be fairly resolved in favor of the current practice of assuming such jurisdiction to have been intended, the present form of the statute, read as a whole, precludes treating a dependent minor already seven-teen years of age as a " child " for purposes of an initial entry of a support order under subdivision (4) of section 92 of the Act but, instead, relegates such dependent to a " poor relative " petition under subdivision 4 of section 101 of the Act.

Significantly, when the Legislature in 1942 conferred, for the first time, upon Children's Courts outside of the City of New York (governed by the Children's Court Act, L. 1922, ch. 547, as amd.) jurisdiction to order support analogous to and patterned on the Family Court Division provisions of the Domestic Relations Court Act of the City of New York, the Legislature followed the common-law rule and the Supreme Court practice in matrimonial litigation by granting to such Children's Courts power to order support during the entire minority of every child (Children's Court Act, § 30-a, subd. 4, as added by L. 1942, ch. 810). And amendments of that section 30-a, subdivisions 1, 3 and 4, by chapter 849 of the Laws of 1945 still further clarified the power of courts governed by that statute to entertain

a petition for support of a minor child up to its twenty-first birthday anniversary and to make all orders for his or her support run during, but not beyond, the entire minority.

Consequently, if respondent herein happened to reside in, say, Westchester County, instead of New York City, he could not have successfully interposed the technical plea of jurisdiction (over a proceeding in behalf of his seventeen-year-old son) which is sustainable in a court governed by the present provisions of the Domestic Relations Court Act of the City of New York rather than the County Children's Court Act.

This fortuitous difference between a statute relating to New York City and one covering other parts of this State illogically deprives some minor children and overprotects defaulting parents. But only the Legislature can, and should, fill this hiatus in the statute law governing this court and also repair gaps in the *parens patriæ* jurisdiction of the Supreme Court of the State of New York pointed out by Mr. Justice SHIENTAG in *Moen* v. *Thompson* (186 Misc. 647, 650, *supra*) and in the opening paragraphs of this opinion. Meanwhile, there must be circumspection against overstepping the bounds of the legislative grant of enumerated powers to a statutory court of limited jurisdiction.

Upon the oral argument two secondary objections to jurisdiction were stated but not developed, nor has either of them been briefed, namely, (1) this court's alleged lack of power to order support for a child permanently residing in another State, and (2) attendance at public high school after the age of seventeen years until graduation does not constitute " other exceptional circumstances " within the meaning and purpose of subdivision 4 of section 92 of the Domestic Relations Court Act.

In " *Almandares* " v. " *Almandares* " (186 Misc. 667) I had occasion to elaborate a view directly opposite to the proposition just above designated " (1) ". And in *Anonymous* v. *Anonymous* (173 Misc. 679, 684) I reached a conclusion contrary to the proposition just above designated " (2) " and concurred with a previously published ruling of Mr. Justice PANKEN (*Szilagyi* v. *Szilagyi*, 170 Misc. 1009, 1013–1014). However, the Appellate Division, First Department (in *Wagner* v. *Wagner*, 257 App. Div. 307, 308) expressly reserved for future determination by it the precise question involved in the proposition above designated " (1) "; and, likewise, in *Szilagyi* v. *Szilagyi* (257 App. Div. 630, 631), the Appellate Division stated: " In affirming the order appealed from [170 Misc. 1009, *supra*], we do not adopt the reasoning of the trial justice or his construc-

tion of the Domestic Relations Court Act (§ 92, subd. [4]; § 101) with respect to possible liability of the appellant Marie Szilagyi, the paternal grandmother, or the father for support of the former's grandson, William Szilagyi, after the age of seventeen years. Upon the question thus presented we do not now pass.''

In the absence of a controlling appellate court ruling and because of respondent's attorney's seeming abandonment of those two secondary objections in reliance solely on the primary objection fully considered and sustained in this opinion, decision upon the instant motion is confined to, and rests upon, such primary objection ground.

For the foregoing reasons the petition must be, and hereby is, dismissed, as matter of law for lack of subject matter jurisdiction.

An order to that effect is being entered today simultaneously with the filing of this opinion.

Notice shall be given to the parties pursuant to the subjoined direction.