" CHARLES KINSEY, JR.", by " REBECCA KINSEY ", Petitioner, v. " CHARLES KINSEY ", Respondent.*

Domestic Relations Court of the City of New York, Family Court, New York County, August 6, 1951.

---

* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act of the City of New York (L. 1933, ch. 482).

*William T. Andrews* for petitioner.

*James E. Joyce* for respondent.

SICHER, J. There is presented a novel question as to the meaning and effect of chapter 786 of the Laws of 1950 in relation to previously enacted subdivisions (4) and (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York.

That 1950 enactment amended the Domestic Relations Court Act of the City of New York by inserting a new section (§ 92-a) and another subdivision in section 92 (subd. [6-a]) and adding a sentence at the end of subdivision 1 of section 101 as follows:

" § 92. Powers  *  *  *  (6-a) To make an order requiring a wife, if she is of sufficient means, to support or contribute to the support of the husband who is or is likely to become a public charge." (L. 1950, ch. 786, § 1, eff. April 18, 1950.)

" § 92-a. *Petition for support of husband.* The commissioner of welfare of the city of New York, in an appropriate case, may file with the court a petition against a wife who has sufficient means, for the support of the husband who is or is likely to become a public charge." (Added by L. 1950, ch. 786, § 2, eff. April 18, 1950.)

" § 101. *Legal liability for support.* 1.  *  *  *  A wife is hereby declared to be chargeable with the support of her husband who is or is likely to become a public charge, and, if possessed of sufficient means, may be required to pay such sum, or any part thereof, as may be necessary to prevent his being or becoming a public charge." (Added by L. 1950, ch. 786, § 3, eff. April 18, 1950.)

Said 1950 enactment left untouched the following previously enacted provisions of Domestic Relations Court Act of the City of New York:

" To make all orders for support run until further order of the court, except that orders for support of a child shall run until the child is seventeen years of age; or, where there are physical or mental disabilities of the child or other exceptional circumstances that warrant it, in the discretion of the court during such period after seventeen years and beyond the child's minority as such physical or mental disabilities or other exceptional circumstances may continue." (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [4].)

" To require the support by those legally chargeable therewith of a dependent adult who is unable to maintain himself and is likely to become a public charge; the court to determine

and apportion the fair and reasonable sum that each such relative shall be required to contribute, as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case.'' (N. Y. City Dom. Rel. Ct. Act, § 92, subd. [9].)

'' The *parents,* the grandparents and the children of *a dependent person over seventeen years of age,* who has been a resident of the city at any time during the twelve months preceding the filing of the petition for his support, and *who is unable to maintain himself and is likely to become a public charge are hereby declared to be severally chargeable with the support of such poor relative.* The court shall determine and apportion the fair and reasonable sum that *each* such person shall be required to contribute, as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means.'' (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 4; emphasis supplied.)

The foregoing statutory provisions have been quoted in connection with the following facts:

The parties first became known to the predecessor Family Court Part of New York City Magistrates' Courts already in 1922. Originally there was an order for wife and child. But the parents are now divorced, each is remarried, and since February 28, 1940, the only order of the successor Family Court Division of this court has been for the son. On that date the prior order was modified to $10.83 semimonthly for support of '' Charles, Jr.'', then twenty-one years old, on the ground that he was industrially incapacitated by mental defectiveness and epilepsy and therefore likely to become a public charge.

On October 15, 1948, respondent's application for suspension of that order was denied (by Justice STITT) because a September 29, 1948, Bellevue Hospital report showed that the son, then thirty years of age, was still physically and mentally disabled to support himself.

That Bellevue Hospital report read as follows:

''In accordance with your request ' Charles Kinsey, Jr.' was examined at this Clinic on September 8, 1948.

'' Our findings indicate that Mr. ' Kinsey ' shows no psychotic trends. He is a mental defective and has had epileptic seizures of varying frequency since the age of 14. With medication prescribed by his private physician, Mr. ' Kinsey ' reports that the number of seizures has markedly decreased and that he has not had a seizure for a long time.

'' The patient has evidently made a good social adjustment, belongs to two choirs and to a male chorus. He has fair insight into the reactions of people in his environment toward his illness. Patient has evidently been the butt of contention between his mother, with whom he lives, and his father, from whom the mother has been divorced for many years — with the mother on the one hand insisting that ' Charles ' is unable to work and support himself, and the father refusing to support him any longer.

'' The patient's work history includes many unskilled jobs of very short duration, with his last job in 1941. He rationalizes the fact that he has not sought work since then because his mother did not ask him to do so. He is evidently extremely dependent on his mother.

'' At this time we believe that Mr. ' Kinsey's ' employability is very limited. He might be referred for special placement through the New York State Employment Office, Division of the Handicapped, for work in some unskilled job. Placement difficulties would, of course, arise because of his mental deficiency and epileptic seizures. Mr. 'Kinsey ' reluctantly accepted the idea of special placement, and agreed to accept counselling.

'' Diagnosis: Epilepsy and Mental Deficiency.''

On September 22, 1950, the parents, the son, and the son's wife were before Justice FOGARTY upon respondent's renewed plea for termination of the order, on the new ground that the son was then married.

The son's wife was also present at that hearing, which eventuated in a modified consent order of $12 a month by way of compromise after Justice FOGARTY had called attention to the recently enacted chapter 786 of the Laws of 1950 and had commented as follows on the son's wife's testimony that she was earning about $36 a week:

'' The Court: There is your answer. First of all you have to exercise your remedy against the wife. You will have to file a petition against your wife downstairs in order to clear the situation because of the fact of the new amendment that provides the wife has to support the husband if he is apt to become a public charge and he is over the age of 17. But the father has a responsibility because of his handicap but until we exhaust the remedy against the wife I don't think you can go against the father, unless the father is willing to compromise this order and allow something a week to him, because on this amount he may not be able to carry on. * * * Under the new amendment to the law, a wife has to support a husband

before he can become a public charge. A husband has to support a wife. The first obligation is the husband's and the wife's and thereafter they can go to the parents." (Excerpts from stenographer's minutes.)

On March 1, 1951, Justice Fogarty indorsed on the petition: " Petitioner only. Since my endorsement as of February 6, 1951 it appears that respondent has not been employed since January 18, 1951. Order temporarily suspended, as of 1/18/51. Respondent is ill and unable to work. No arrears exist at this time."

Respondent returned to work about April 1, 1951, and has been earning an average of $72 every ten days. However, he has renewed his application to terminate the order on the ground of present lack of jurisdictional facts sufficient for its continuance.

After study of the briefs of counsel and independent research I have concluded that respondent is entitled as a matter of law to termination of this proceeding, without prejudice, however, to the filing of new petitions, as hereinafter specified, when and if " Charles Kinsey, Jr." will in the future have become a recipient of public assistance or likely to become in need thereof.

Unless otherwise provided by statutory regulation or contract, " a parent ordinarily is under no legal obligation to support his adult child " (67 C. J. S., Parent and Child, § 17, p. 704).

" At common law it was not only the moral obligation but the legal duty of parents to provide for the maintenance of their *minor* children. *There was no common-law duty requiring parents to maintain their children beyond the period of their minority even though the children were without means and unable to earn a livelihood.* While there was a moral duty to do so, the common law did not recognize or enforce it. (*People* v. *Hill,* 163 Ill. 186; 46 N. E. 796; see, also, *Matter of Kane* v. *Necci,* 245 App. Div. 1.) The statute, however, which rests upon a prior moral obligation, imposes such a duty upon a parent if he or she is of sufficient ability and *the child is the recipient of public relief or likely to become a public charge."* (*Betz* v. *Horr,* 250 App. Div. 457, 458; rev. on other grounds, 276 N. Y. 83.)

" At Common Law there is no liability of a parent for the support and maintenance of an adult child. It follows that the liability, if any, of the estate in this case is solely statutory. In respect to the imposition of liability upon specified relatives, Section 24 of the Mental Hygiene Law is a statute in derogation

of the Common Law. As such, it is to be strictly construed."
(*Matter of Mangan,* 83 N. Y. S. 2d 393, 397.)

"There can be no dispute that at common law a parent was not liable, save in exceptional circumstances, for the support and maintenance of an adult child." (*Matter of Wright,* 172 Misc. 215, 216.) See, also, *Matter of McClancy* (182 Misc. 866, 867, affd. 268 App. Div. 876, affd. 294 N. Y. 760).

In *Matter of Winter* v. *Winter* (246 App. Div. 232), a proceeding under subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York, the Appellate Division, First Department, reversed a Family Court order requiring a father to pay to his adult daughter a certain sum each week for her support, and dismissed the petition, because the evidence failed to disclose that petitioner was likely to become a public charge or that she was unable to obtain employment.

Moreover, marriage of a child usually emancipates him or her, and, in the absence of agreement, likewise terminates the obligation of the parent for support *even during minority* (see 67 C. J. S., Parent and Child, § 15, p. 687, § 89, subd. c, pp. 815–816, and cases cited).

It is conceded that " Charles Kinsey, Jr." and his wife are now living together in the home of the wife's family without public assistance; that there is no issue of their union; that the wife is employed at $36 a week; that her earnings the husband supplements with occasional jobs; and that he is not now receiving or eligible for or in need of assistance from the department of welfare of the city of New York. It follows that there is at this time no jurisdictional basis for an order against the father for support and that therefore the proceeding begun nearly thirty years ago should be closed.

Doubtless " Charles Kinsey, Jr." and his wife will miss the prior $12 monthly contributions from respondent as an addition to their marginal income, and it would be helpful if respondent continue voluntary donations to his son from time to time as a moral obligation recognition of the latter's mental and physical handicaps and as a safeguard against the need for a future application for home relief assistance if Mrs. " Charles Kinsey, Jr." become unemployed. But it is understandable that respondent feels that his second wife and younger issue should have prior consideration in view of " Charles Kinsey, Jr.'s " age and marriage, respondent's limited earnings, and the impairment of his own health as the years mount.

In any event there exists no present enforcible *legal* obligation.

Nor does subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York (quoted, *supra*) contemplate continuance of an order for support of an adult child except one who would otherwise be a recipient of public assistance or in need thereof. That provision merely enables the Family Court (1) to continue *during minority* an order, entered before a child's seventeenth birthday anniversary, for completion of high school education or for discharge of other proper demands on a father's duty of support during the entire minority of his child, comparably to the common law rule and the power of Children's Courts outside the City of New York, under subdivisions 1, 3 and 4 of section 30-a of the Children's Court Act, to order support during the entire minority of every child; and (2) to continue a prior order beyond the twenty-first birthday anniversary of a child who would otherwise be, or likely to become, a public charge and thereby avoid the necessity for a new " poor relative " petition by or in behalf of such adult child under subdivision 4 of section 101 and subdivision (9) of section 92 of the Domestic Relations Court Act of the City of New York. (Cf. " *Mooney* " v. " *Mooney* ", 187 Misc. 789.) But subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York does not enlarge or otherwise alter the above-discussed general rule that there is no duty to support an adult child except one who would otherwise be, or become, a public charge; that is, there is no longer any legal obligation to such grown son or daughter but, instead, solely an obligation to the community to save the public the cost of supporting an adult child who is unable to maintain himself or herself.

Already in 1941 there was created the statutory obligation of a wife, if of sufficient ability, to *reimburse* the commissioner of welfare of the city of New York, or like officials elsewhere in the State, for *past expenditures* of public assistance funds for the maintenance of a husband (Social Welfare Law, § 101). Chapter 786 of the Laws of 1950 created for the first time the further statutory liability of a wife, enforcible in this court, for a *prospective* order to exonerate, not merely indemnify, the community. It would seem that the underlying theory of the 1950 enactment is that an indigent husband is a " poor relative " and that his wife may therefore be included among the persons legally chargeable for his support as a duty to the community rather than as a marital obligation of one spouse to another. For, the Legislature can confer on Domestic Relations Court of the City of New York as a statutory court of enumerated

powers jurisdiction only within the frame of the constitutional grant, namely : " The legislature may establish children's courts, and courts of domestic relations  *  *  *  and may confer upon them such jurisdiction as may be necessary  *  *  *  to compel the support of a wife, child, or poor relative by persons legally chargeable therewith who abandon or neglect to support any of them. (N. Y. Const., art. VI, § 18.) Such enumeration specifies only wives, children and " poor relatives " and does not include husbands.

As above indicated, at the September 22, 1950, hearing Justice FOGARTY regarded chapter 786 of the Laws of 1950 as imposing on the wife the primary duty for support of an indigent husband and the obligation of the parents for such support as secondary only. Moreover, in a July 14, 1950, circular letter of administrative instructions Presiding Justice JOHN WARREN HILL wrote that chapter 786 of the Laws of 1950 " as far as procedure and practice in our court is concerned, places the wife in the same position with respect to her husband as the husband now occupies with respect to the wife, under our law, provided the wife is of sufficient means and provided he is or is liable to become a public charge.  *  *  *  The wife has been made primarily responsible for the support of an indigent husband provided she has sufficient means. It follows therefore, that in a proceeding against the children for the support of their father it must be shown that the wife is unable to support the father."

But, in view of the afore-mentioned constitutional limitation it would seem at least arguable that the legal effect of chapter 786 of the Laws of 1950 is only to include the wife along with the parents and the children of a " dependent adult " (" poor relative ") among the persons legally chargeable for his or her support under previously enacted subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York which declare them to be *severally* chargeable with such support and provide that " the court shall determine and apportion the fair and reasonable sum that each such person shall be required to contribute, as may be just and appropriate in view of the petitioner and the other circumstances of the case ". However, it is unnecessary to consider or decide that question upon the present record. So, this opinion does not purport to determine whether the statutory obligation of a wife for support of a " poor relative " husband is primary and the obligation of the parents and children for such support, under subdivision (9) of section 92 and subdivision 4 of section 101 of the Domestic Relations Court Act of the City of New York

is secondary, or whether they are concurrent and the burden thereof apportionable. The point is mentioned merely for future determination when and if the question squarely arises.

For the foregoing reasons the application for reinstatement of the suspended order for support of '' Charles Kinsey, Jr.'' is hereby denied, and the cross application by the respondent father for termination of the proceeding is granted. However, the consequent dismissal of this proceeding is without prejudice to the filing of new petitions, by '' Charles Kinsey, Jr.'' (or the Commissioner of Welfare of the City of New York) against the wife and also the parents, when and if hereafter '' Charles Kinsey, Jr.'' would otherwise have become a recipient of public assistance or eligible therefor.

Notice shall be given pursuant to the subjoined direction.