"Laura Samson", on Behalf of "David Schoen" and Another, Petitioner, v. "Daniel Schoen", Respondent.*

Domestic Relations Court of the City of New York, Family Court, Queens County, May 11, 1953.

---

\* The opinion as filed sets forth the true names of all parties but as here published substitutes fictitious names and disguises certain other details, in consonance with the spirit of section 52 of the Domestic Relations Court Act (L. 1933, ch. 482).

*" Laura Samson ",* petitioner in person.

*Samuel Weisman* for respondent.

SICHER, J.   This memorandum embodies personal study of the numerous indorsements on the petition, probation bureau chronological record entries, and the voluminous correspondence, since the inception of this proceeding on April 19, 1945.

However, no useful purpose would be served by a detailed recital of all such items.   Suffice it to state only selected facts underlying the conclusion that the proceeding in this statutory court of limited jurisdiction should now at long last be expressly terminated.

On March 1, 1945, there was entered in the Second Judicial District Court of the State of Nevada, Washoe County, a decree of divorce dissolving the bonds of matrimony theretofore existing between " Laura Schoen '' and " Daniel Schoen ", restoring each to the status of a single person, awarding to the mother the care, custody and control of their minor children (" David " and " Bertha "), and directing the father to pay to the mother $10 a week for the care, maintenance and support of each such minor child upon the father's release from service in the United States Army.

That divorce decree was based on the ground of three years' separation and procured by the mother with the father's acquiescence by his executing and filing a waiver and appearance in the action.

The mother shortly remarried; the children have since lived with her and the stepfather, appear to be close to the latter, and have had almost no contact with the father over the intervening years.

" David " was born on August 29, 1932, and " Bertha " on October 13, 1934.

Although the Nevada decree was consensual, its provisions for support of the minor children are not conclusive against them. So, a petition for their support could be, and was, filed in this court in their behalf against the father, while he and they were residing in New York City, for an order of this summary procedure support court in a fair and reasonable amount according to the father's means and earning capacity from time to time as might be determined by this court (N. Y. City Dom. Rel. Ct. Act, § 101, subd. 1; § 92, subds. [1–4]; see *Langerman* v. *Langerman,* 303 N. Y. 465). The Nevada decree award of $10 a week for each of the two children during minority was not binding on them, since they were not parties to that divorce action nor to the financial agreement of the parents embodied in the divorce decree. Nevertheless, such agreement constitutes some evidence of the measure of the father's then restricted ability to contribute support and of the mother's appraisal and awareness of his limited capacity (see " *Johnston* " v. " *Johnston* ", 177 Misc. 618).

Such a support petition was filed by the mother in the children's behalf on April 17, 1945, in the New York County Family Court Division of this court; and on that date there was entered a consent order directing deposit of the sum of $10 a week, beginning April 23, 1945, for both those children, i.e., one half of the Nevada divorce decree amount. That order was made on written agreement of the parents, pursuant to section 118 of the Domestic Relations Court Act of the City of New York, and it was based on respondent's then earnings of $31 a week.

There was also made an order of protection providing for certain visitation.

On December 5, 1945, there was a hearing of petitioner's complaint of arrears and of her request for an increase and also of the father's complaint that the visitation directions had been violated. At the conclusion of that hearing Justice POLIER indorsed on the petition the following disposition: " Arrears $60. Order modified to $15 a week, plus $60 on arrears. Respondent to have privilege of visiting children in Washington, D. C. on notice to mother. Respondent alleges receiving $30 a week plus $50 to $60 for expenses."

Thereafter, Justice DELANY conducted on June 7th and June 27, 1946, new hearings, at which both parties were represented by attorney, and further modified the order to $20 a week, beginning July 1, 1946.

On October 20, 1947, both parties were before Justice MARCHI-SIO, and he indorsed on the petition the following disposition of the respective applications for increase and reduction: '' Arrears $120. Order continued, plus $10 a week on arrears. Bond suggested if any further defaults. Paroled. Bail discharged. Respondent pays $60 in open Court to petitioner and the arrears above set are further reduced to $60. First payment on arrears to commence December 1, 1947.''

On January 8, 1948, at the request of petitioner and her attorney, a warrant was issued by me pursuant to subdivision 1 of section 132 of the Domestic Relations Court Act of the City of New York, because of respondent's failure to comply fully with that October 20, 1947, order and his not answering a summons which had been issued. However, that warrant was vacated by Justice MULHOLLAND on August 12, 1948, on proof that the arrears had then been reduced to $20.

Again on May 18, 1950, on petitioner's request, Justice LANZETTA ordered another warrant but stayed its execution to June 12, 1950, on which date Justice MULHOLLAND indorsed on the petition: '' Respondent's sister present. Vacate warrant. Adjourned for presence of petitioner to June 26, 1950. Order continued. Notify respondent.''

On June 26, 1950, neither petitioner nor respondent was present, so that Justice MULHOLLAND indorsed on the petition: '' No appearance. No action.''

On July 27, 1950, at petitioner's request, the proceeding was transferred from New York County to Queens County Family Court because of the removal of petitioner to Queens County.

The next material development was a communication from respondent, from California, received November 15, 1950, to the effect that he intended to remit only $10 a week because '' David '' had attained the age of eighteen years on August 29, 1950.

Section 92 of the Domestic Relations Court Act of the City of New York provides:

'' In the exercise of its jurisdiction the court shall have power * * *

'' (4) To make all orders for support run until further order of the court, except that *orders for support of a child shall run until the child is seventeen years of age;* or, where there are physical or mental disabilities of the child or other exceptional circumstances that warrant it, in the discretion of the court during such period after seventeen years and beyond the child's

minority as such physical or mental disabilities or other exceptional circumstances may continue." (Emphasis supplied.)

On November 3, 1950, Justice Mulholland had indorsed on the petition: "Petitioner and respondent's sister; also Probation Officer present. (Sister's name is 'Hannah Schoen'.) Although one child is eighteen years of age, he is attending school and will graduate in June. Order continued to June 29, 1951, for support of both children. Respondent to pay off all arrears on or before January 5, 1951. Notify respondent, with *privilege to respondent to appear and raise objections.*" (Emphasis supplied.)

On January 8, 1951, Justice Mulholland made the following further indorsement on the petition: "The current arrears are $30. No appearance today. Notify respondent to make payments regularly and pay all arrears on or before March 1, 1951 *— without prejudice to petitioner and respondent to appear and object.* Notify parties." (Emphasis supplied.)

It should be observed that Justice Mulholland's November 3, 1950, disposition was made in the absence of respondent and his January 8, 1951, disposition in the absence of both parties and were therefore stated to be without prejudice to a further hearing if unacceptable.

On March 1, 1951, Justice Mulholland made the following further indorsement on the petition: "No appearance. Again notify respondent to pay all arrears. Order continued."

On August 22, 1951, Justice McClancy made the following indorsement on the petition: "Petitioner and respondent's sister present, 'Hannah Schoen'. Physical examination of son 'David' at the Court Clinic. Case is adjourned to September 21, 1951."

That examination was ordered to determine whether "David", then nearly nineteen years old and in college suffered the kind of physical disability contemplated in the concluding sentence of subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York quoted *supra,* petitioner having urged that "David" suffered from rheumatic fever.

Under date of August 23, 1951, Dr. Philip E. Henig, director of the medical division of this court, made the following report of the examination ordered by Justice McClancy:

"'David Schoen', age 18, complains of intermittent attacks of fever for the past year. At 6, he is said to have rheumatic fever and was told he has rheumatic heart disease. There are no other symptoms and no other relevant history. *Physical Exami-*

*nation:* Patient is an adult male, height 5′ 10″, weight 157 pounds. Head: Normal. Neck: Normal. Lungs: Clear. Heart: Normal. B. P. 136/80. Abdomen: Normal. Extremities: Normal. *Diagnosis:* No cardiac disease. *Opinion:* My opinion is concurred in by a Cardiac Clinic. This boy can engage in unrestricted activity.''

That report was presented to Justice PANKEN on September 12, 1951, and thereupon he indorsed on the petition: '' Write respondent as directed. *Order as to ' David ' terminated by operation of law.* Order continued.'' (Emphasis supplied.)

That ruling expresses the view, which is the '' law of the case '', that the language of subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York automatically fixes the seventeenth birthday anniversary as the expiration date of every support order for a child, unless there will have been an express extension on proof of facts within the ambit of the concluding sentence of subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York.

Such concluding sentence has been applied in cases where the child is a mental defective, psychotic, epileptic, or otherwise industrially incapacited. (See, for example, '' Kinsey '' v. '' Kinsey '', 200 Misc. 760.) In addition, it is the usual practice in this court to regard a child's need to continue education until graduation from high school as one of the '' exceptional circumstances '' contemplated by subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York. However, that practice has not yet been authoritatively approved, the New York Appellate Division, First Department, having expressly declined to pass upon that precise question and reserved it for future determination. (*Szilagyi* v. *Szilagyi,* 257 App. Div. 630, affg. 170 Misc. 1009.) So, it is extremely doubtful that a college education would be sanctioned as one of the '' exceptional circumstances '' contemplated by subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York. Thus, it has been held by the highest court in New Jersey that a father is '' under no legal duty to send his son to a boarding school, no matter what his financial circumstances may be,'' nor to furnish education beyond what is required and '' provided by the school system of the State '' (*Ziesel* v. *Ziesel,* 93 N. J. Eq. 153; cf. *Commonwealth ex rel. Binney* v. *Binney,* 146 Pa. Superior Ct. 374).

True, in *Herbert* v. *Herbert* (198 Misc. 515), Justice LEVY made an order for support of two children (one of them already over seventeen years of age) which provided an allowance for

their college education. But that case is clearly distinguishable; for, it was entered on consent of the father, a man of very large income, the sole issue presented was the amount of the order, and no question was raised as to the lack of subject matter jurisdiction to entertain a mother's application for a child already over the age of seventeen years at the time of the filing of the petition in its behalf (cf. " *Mooney* " v. " *Mooney* ", 187 Misc. 789).

Likewise, the divorce courts have occasionally required a father of amply sufficient means to contribute toward the college education of a gifted child (see, for example, *Esteb* v. *Esteb*, 138 Wash. 174; *Jackman* v. *Short*, 165 Ore. 626; *Hale* v. *Hale*, 132 P. 2d 67); and in *Cohen* v. *Cohen* (193 Misc. 106), New York Supreme Court Justice BENVENGA stated: " The contention that the defendant is not compelled to provide more than a public school education is, under the prevailing weight of modern authority, untenable ". (P. 107.) However, such decisions are exceptional and rendered in divorce actions where jurisdiction continues during the entire minority. But in creating the Domestic Relations Court of the City of New York the Legislature did not adopt the common-law doctrine, applied in Supreme Court matrimonial actions, that imposes upon each father a duty of support until his child's twenty-first birthday anniversary unless sooner married or self-sustaining. Instead, the Domestic Relations Court Act tied in the parental duty of support with the maximum compulsory instruction age prescribed by the Education Law of the State of New York; as originally enacted (L. 1933, ch. 482), the New York City Domestic Relations Court Act (§ 92, subd. [4]) therefore specified sixteen years of age as the expiration date of an order for support of a child and raised it to seventeen years (the present figure) by chapter 726 of the Laws of 1937 to conform with chapter 789 of the Laws of 1936, which had amended the Education Law to empower the Board of Education in each city of the State to require minors from sixteen to seventeen years of age who were not employed to attend upon full-time instruction (Education Law, § 3205, subd. 3). See " *Mooney* " v. " *Mooney* " (187 Misc. 794–797, *supra*), and the following further comment:

" Significantly, when the Legislature in 1942 conferred, for the first time, upon Children's Courts outside of the city of New York (governed by the Children's Court Act, L. 1922, ch. 547, as amd.) jurisdiction to order support analogous to and patterned on the Family Court Division provisions of the Domestic Relations Court Act of the City of New York, the Legislature

followed the common-law rule and the Supreme Court practice in matrimonial litigation by granting to such Children's Courts power to order support during the entire minority of every child (Children's Court Act, § 30-a, subd. 4, as added by L. 1942, ch. 810). And amendments of that section 30-a, subdivisions 1, 3 and 4, by chapter 849 of the Laws of 1945 still further clarified the power of courts governed by that statute to entertain a petition for support of a minor child up to its twenty-first birthday anniversary and to make all orders for his or her support run during, but not beyond, the entire minority.

" Consequently, if respondent herein happened to reside in, say, Westchester County, instead of New York City, he could not have successfully interposed the technical plea of jurisdiction (over a proceeding in behalf of his seventeen-year-old son) which is sustainable in a court governed by the present provisions of the Domestic Relations Court Act of the City of New York rather than the County Children's Court Act.

" This fortuitous difference between a statute relating to New York City and one covering other parts of this State illogically deprives some minor children and over-protects defaulting parents. But only the Legislature can, and should, fill this hiatus in the statute law governing this court and also repair gaps in the *parens patriæ* jurisdiction of the Supreme Court of the State of New York pointed out by Mr. Justice Shientag in *Moen* v. *Thompson* (186 Misc. 647, 650, *supra*) and in the opening paragraphs of this opinion. Meanwhile, there must be circumspection against overstepping the bounds of the legislative grant of enumerated powers to a statutory court of limited jurisdiction." (" *Mooney* " v. " *Mooney* ", *supra*, pp. 797–798.)

Proposals for the further amendment of subdivision (4) of section 92 of the Domestic Relations Court Act of the City of New York by extending the duration of orders for support of a child during the entire minority have not met with the favor of the Legislature or latterly even of the board of justices of this court. It follows therefore that this court's orders for support of a child still expire automatically on the seventeenth birthday anniversary, and that there is no power to heed the mother's plea that respondent be required to contribute toward the cost of " Bertha's " completing her college education to become a teacher.

Justice Panken's September 12, 1951, disposition expressly directed that the order as to " David " had terminated by operation of law but seemingly he continued the $20 weekly order

for " Bertha " alone and without specified date. " Bertha " had not yet then attained the age of seventeen years but did reach that age on October 13, 1951, as of which date the order for her automatically expired, not having been extended.

Petitioner errs in her recollection, as voiced in a March 11, 1953, letter to probation officer Carfora, that the ruling continuing the support for " Bertha " was made not before her seventeenth birthday but " during the Spring of 1952, at which time ' Bertha ' was well past (17) seventeen, since her birthday is October 13, and the Judge knew it." For, actually there was never any such ruling. The only court steps subsequent to September 12, 1951, were the below-described ex parte hearings and dispositions on March 19, 1952, March 10, 1953, and April 9, 1953.

On March 19, 1952, Justice McCLANCY indorsed on the petition: " Present. Probation Officer Oswell and petitioner. Probation Officer to write respondent in California asking him to voluntarily increase support order as to child ' Bertha '." That was not a ruling on a hearing but merely a suggestion of Justice McCLANCY for transmission of the mother's plea in " Bertha's " behalf to the father.

Such plea proved unavailing, eliciting a March 31, 1952, refusal letter in which respondent wrote: " I did not know the children were attending college. The last and only time I heard from them in seven years was October of 1951 with a demand for money."

In this State a visitation dispute would not excuse a father's violation of a court order for support of his child (see Grossman on New York Law of Domestic Relations, § 162, and cases cited; also, the discussion in " *Almandares* " v. " *Almandares* ", 186 Misc. 667). " It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents for causes of which they are innocent and by proceedings to which they are not parties. The legal and natural duty of the father to support his children is not to be evaded by him * * * on the ground of any dissensions whatsoever with his wife. A natural father would not think of doing so, and an unnatural one should not be permitted to do so." (17 Am. Jur., Divorce and Separation, § 693, p. 529.) " While the decree of divorce dissolves the marital relations of the parties, it did not divorce the father from his child or dissolve his liabilities to it." (Carmody on New York Practice [2d ed.], § 194, p. 293, citing *Laumeier* v. *Laumeier*, 237 N. Y. 357.)

But it is also pertinent that " The aftermath of divorce brings a variety of sensitive situations   *   *   *.  Probably the most frequent and familiar duels between the former partners to a marriage arise over two issues: money is one, and the exercise of the father's visitation privileges the other.   *   *   *   Time and events have come between the father and his children.  He has lost the ease of daily contact.  His feeling of guilt toward them may make him press too hard for a loving response from them, and any rebuff they offer is magnified out of its true proportion.  The children too are ill at ease.  His presence may be a threat to the new security they may have worked hard to build without him."  (" Children of Divorce ", by J. Louise Despert, M. D., 1953, p. 69.)

Nevertheless, more fruitful financial results for these children might perhaps have been achieved if some of the intelligence, energy and forcefulness evinced in petitioner's pressure on the respondent in this summary procedure support court had been directed toward causing the children to keep in touch with their father and let him share her pride in their development.

On May 12, 1952, the mother's present husband, a New York City attorney, wrote that in view of the question of the continuing jurisdiction of this court raised by the age of the children his firm had been retained to institute an action to recover the total balance which might be due or become due under the March 1, 1945, divorce decree, and for that purpose he asked for a statement of the entire amount collected from respondent through this court.  That letter mentions that such course was recommended by Justice McClancy, and to me also it seems the best, and indeed only, remedy now available.

Payments by respondent through this court total $3,380, of which $2,060 were remitted by him through New York County Family Court, between April 23, 1945, and July 27, 1950, and $1,320 through Queens County Family Court, from August 13, 1950, to April 2, 1952.

The March 1, 1945, Nevada judgment directs payment of $10 a week for each of the two children during their entire minorities.

Seemingly, such action on the Nevada judgment has not yet been instituted; and the matter remained dormant until receipt of a February 5, 1953, request from petitioner that the case be scheduled again, on the assumption that there were still unpaid arrears accrued under this court's order.

Such a hearing was scheduled before me, initially on March 10, 1953, and finally on April 9, 1953, when I reserved decision pending the study which has eventuated in this memorandum.

The mother was present on both those days but not the father. Instead, the latter's sister attended and in his behalf presented a letter, dated March 28, 1953, but not showing from where it was sent, as follows: '' I am writing this in hopes that the case of ' *Schoen* ' v. ' *Samson* ' will come to an end. Since coming out of the Army in 1944 I have remained single because I could not support a new wife and ' David ' and ' Bertha '. I have recently married again, and now that the children have become of age may I ask the Court at this time to stop my payments to Mrs. ' Samson '. I am told that the reason the children did not write me was because Mrs. ' Samson ' did not have my address. Will you please ask her for me how she managed to write to a former employer of mine also when she needed me to pay the doctor bill for ' David '.''

Because respondent's sister is not an attorney and the relations between her and petitioner are tense and unfriendly I caused probation officer Carfora to notify her that she would not be permitted to represent respondent but should furnish his address to which this memorandum might be sent. In response, on April 29, 1953, the attorney who had represented respondent on the June 7th and June 27, 1946, hearings filed another notice of appearance in his behalf and requested that a copy of this memorandum be sent to that attorney.

Inasmuch as '' Bertha '' attained the age of seventeen years on October 13, 1951, and was then in Queens College, the order for her terminated automatically on that date, although any deposits made thereafter by respondent and remitted to petitioner became the child's property and need not be refunded (N. Y. City Dom. Rel. Ct. Act, § 29, subd. 2). But those deposits may be credited against any claim in the action on the Nevada divorce decree.

It appears further that the book arrears accrued on October 11, 1951, were $170, and that since that date respondent deposited a total of $230, so that there are actually now no arrears.

For the foregoing reasons the proceeding is hereby now marked '' Terminated '' and any book arrears cancelled, without prejudice, however, to an action in the children's behalf on the March 1, 1945, Nevada judgment in a court of competent jurisdiction (see '' *Johnston* '' v. '' *Johnston* '', 177 Misc. 618 and 180 Misc. 741).

Notice shall be given pursuant to the subjoined direction.